**UNITED STATES of America,**
**Plaintiff–Appellee,**

**Najeeb Rahman, Claimant–Appellant,**

**v.**

**TEN THOUSAND DOLLARS ($10,-000.00) IN UNITED STATES CURRENCY, Defendant.**

**No. 87–5759.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1988.

Decided Nov. 7, 1988.

Donna Eide, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Charles Weisselberg, Post Conviction Justice Project, Los Angeles, Cal., and Talis Haight, Law Student, for claimant/appellant.

Before PREGERSON, REINHARDT and NOONAN, Jr., Circuit Judges.

NOONAN, Circuit Judge:

Najeeb Rahman seeks relief from a default judgment of forfeiture. The district court, finding that the money in question had already been paid over to the government, held that it had no jurisdiction. We reverse and remand.

## BACKGROUND

On May 2, 1984, the United States Customs Service seized $10,000 from Rahman as he was leaving the country on the ground that he had failed to report the sum as required by 31 U.S.C. § 5316. Rahman filed a petition for relief from forfeiture with the Customs Service, which rejected the petition on June 18, 1985. On October 13, 1985, the government brought a civil forfeiture action against the cash citing both 31 U.S.C. § 5317 and 21 U.S.C. § 881 (forfeiture of drug proceeds).

Although the government maintains that it informed Rahman of this action by letters of October 31, December 2, and December 13, 1985, Rahman asserts he did not receive letter notification "until the latter part of December 1985." At this time Rahman was incarcerated at Terminal Island. The notification stated that Rahman had until January 2, 1986 to file a claim contesting the forfeiture.

According to Rahman, he retained a New York lawyer, Michael Maloney, who in turn contacted the office of Assistant United States Attorney Stephen D. Petersen on December 31, 1986. According to Rahman's affidavit, Maloney spoke to a secretary, "a Ms. Patty," and asked for a stipulation to extend the time in which to respond to the complaint, and Ms. Patty said the lawyer could have an extension up to February 1, 1986. This allegation is disputed by Petersen, who asserts that no approvals are given by his office without a written stipulation.

Again, according to Rahman's affidavit, he was unable to pay his attorney and in January sought to have one appointed by writing to the district court and sending a copy of the letter to Petersen. According to another letter of Rahman, he asked the "9th Circuit" in January to make this appointment. Rahman asserts that on February 3, 1986, he called Ms. Patty and asked for a further continuance and she told him that Petersen was going ahead on the default.

On February 12, 1986, the district court entered a default judgment forfeiting the cash. Rahman says he was sent a copy of the default judgment on March 5, 1986.

On March 23, 1986, Rahman wrote District Judge Wilson asking that he appoint counsel. On May 5 he repeated this request together with a request that Judge Wilson set aside the default judgment. The request was repeated again by Rahman on June 23, 1986. Thereafter Rahman obtained free legal advice from the Post-Conviction Justice Project at U.S.C.Law Center. He then, on October 30, 1986, filed an answer to the forfeiture complaint and

with it a motion under Fed.R.Civ.P. 60(b) to set aside the default.

Rahman's motion was heard November 24, 1986. The government showed that the judgment had been executed on June 6, 1986, and the cash released to the government. The court held that Rahman had failed to seek a stay of execution, that the property had left the control of the court, and that therefore the court's jurisdiction ended and it was without power to order the return of the funds.

## ANALYSIS

A forfeiture action is *in rem*. Jurisdiction *in rem* is predicated on the "fiction of convenience" that an item of property is a person against whom suits can be filed and judgments entered. *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 22–23, 80 S.Ct. 1470, 1472–1473, 4 L.Ed.2d 1540 (1960). The use of *in rem* forfeiture began at a time when jurisdiction was premised on territorial notions of sovereignty. *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878). This view of jurisdiction has evolved to one based on due process concerns for "fair play and substantial justice," *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)), even when the court's jurisdiction is predicated on its control over an item of property or *res. Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977) (" 'judicial jurisdiction over a thing' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing.").

The relationship of the minimum contacts rule after *Shaffer* to *in rem* proceedings has not been the subject of many cases or much scholarly commentary. *See* Note, *Has Shaffer v. Heitner been Lost at Sea?*, 46 *Louisiana L. Rev.* 141, 142 ("the issue has often been ignored altogether" in admiralty actions). *But see Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1152 (5th Cir.1977) (traditional view of *in rem* jurisdiction "difficult to square with the modern view" of jurisdiction); *see also United States v. An Article of Drug Con-*

*sisting of 4680 Pails*, 725 F.2d 976 (5th Cir.1984); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 334 (5th Cir.1978). Although appellant argues that jurisdiction exists under the *International Shoe* standard, we decline to address that issue here because this case can be decided on the basis of traditional *in rem* principles.

The general rule is that, in an *in rem* action, removal of the *res* ends the jurisdiction of the court. But exceptions exist. If the property is removed by "an accidental or fraudulent or improper removal" jurisdiction is not destroyed. *The Rio Grande*, 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874). The exceptions have been frequently acknowledged in principle, although never so far as we can determine actually applied. *See, e.g., Farwest Steel Corp. v. Barge Sea–Span*, 769 F.2d 620, 621–22 (9th Cir.1985); *American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215, 1219 (9th Cir.1970); *Criscuolo v. Atlas Imperial Diesel Engine Co.*, 84 F.2d 273, 280 (9th Cir.1936).

The present case *may be* an appropriate case to apply one of the exceptions. If the district court finds as a fact that Rahman sought relief from the default judgment before June 6, 1986, when execution was complete, the court may conclude that the removal by execution was either improper or accidental. In such case, one or other of the *Rio Grande* exceptions applies, and the court has jurisdiction to consider Rahman's motion to grant relief from a default.

To find that Rahman timely sought appropriate relief, the district court may construe Rahman's letter of May 5, 1986, as a request for stay. We have consistently held in this circuit that courts should liberally construe the pleadings and efforts of pro se litigants, particularly "where highly technical requirements are involved." *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984) (conversion of Rule 12(b)(6) motion into summary judgment proceeding under Rule 56(c)). The facts of Rahman's case appear to warrant no less indulgence than we have afforded pro se litigants in the past.

As to the "improper" or "accidental" requirement, the district court may treat as accidental the fact that the letter, like the earlier request for appointment of counsel, reached the district judge's chambers but not the district judge. This misdelivery was apparently the operative fact that led to the cash being paid without further judicial action.

The government points to *United States v. $57,480.05*, 722 F.2d 1457, 1459 (9th Cir. 1984), in which two barriers were found to prevent reviving jurisdiction after a forfeiture had been executed. One was that enforcing a constructive trust against the government would violate sovereign immunity in the absence of any statute or regulation "clearly establishing fiduciary obligation." The other was that judgment for the claimant "would require an impermissible payment of public funds not appropriated by the Congress," contrary to the constitutional command that no funds be drawn from the Treasury that have not been appropriated. U.S.Const.Art. I, § 9, cl. 7.

■ The answer to the first objection is that the Little Tucker Act gives the district court jurisdiction over claims against the United States, up to $10,000, founded upon an act of Congress. 28 U.S.C. § 1346(a)(2). If a claim falls within the Act, the United States "has presumptively consented to suit." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). An action to recover an allegedly unlawful forfeiture under a revenue act is a claim founded upon a law of Congress. *Menkarell v. Bureau of Narcotics*, 463 F.2d 88, 90 (3rd Cir.1972). The reasoning of *Menkarell* has been extended in this circuit to hold that a claim asserting that any forfeiture is unlawful is a claim seeking relief under the Tucker Act. *Simons v. United States*, 497 F.2d 1046, 1049 (9th Cir.1974). The opinion of the court in *United States v. $57,480.05* did not have reason to address the Tucker Act argument.

■ As to the barrier erected by Article I of the Constitution, it is not applicable where what is at issue is cash impressed with a constructive trust. *Emery v. United States*, 186 F.2d 900 (9th Cir.), *cert. denied*, 341 U.S. 925, 71 S.Ct. 796, 95 L.Ed.

1357 (1951). If, for example, an agent of the United States had scooped up the cash in dispute and, without waiting for a judicial order, had run to the nearest outpost of the Treasury and deposited the money in the name of the United States it would be absurd to say that only an act of Congress could restore the purloined cash to the court. Analogously in this much more difficult case, if Rahman can prove that he is entitled to relief from the default and that he is entitled on the merits to prevent the forfeiture, the money at stake may be restored by judicial action and need not wait for a congressional appropriation. *United States v. $57,480.05* did not address this kind of situation. There was "no contention" that any exception for improper, accidental, or fraudulent removal was involved. 722 F.2d at 1459.

We express no opinion on the merits of Rahman's request for relief from the default or on the merits of his legal position as to the money.

**REVERSED AND REMANDED.**