Martin **ONWUBIKO**, Petitioner–Appellant,

v.

**UNITED STATES of America,** Respondent–Appellee.

No. 1560, Docket 91–2591.

United States Court of Appeals, Second Circuit.

Submitted May 22, 1992.

Decided July 15, 1992.

Martin Onwubiko, petitioner-appellant pro se, Federal Deportation Center, Oakdale, La.

Leslie Brodsky, Asst. U.S. Atty., E.D. New York, Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., Robert L. Begleiter, Varuni Nelson, Asst. U.S. Attys., of counsel), for respondent-appellee.

Before: PRATT and ALTIMARI, Circuit Judges, and ROBERT J. KELLEHER, District Judge of the United States District Court for the Central District of California, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

When Martin Onwubiko was arrested at the John F. Kennedy International Airport, he was carrying 72 heroin-filled balloons in his digestive tract. Onwubiko was also carrying a garment bag, $2,483 in United States currency, his passport, and a return plane ticket to Nigeria. The Drug Enforcement Administration seized everything. Now, Onwubiko wants his personal proper-

ty back, but the government claims that most of it has been administratively forfeited to the United States. Because the district court improperly treated Onwubiko's papers as a motion for return of property under Fed.R.Crim.P. 41(e), and because Onwubiko's *pro se* submissions state a claim upon which relief could be granted, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## FACTS AND BACKGROUND

On September 15, 1990, Onwubiko, a used-clothing dealer from the Benin Republic (a part of Nigeria), was arrested for importing 557 grams of heroin into the United States, in violation of 21 U.S.C. § 952(a), when he attempted to enter the United States at John F. Kennedy Airport with 72 heroin-filled balloons in his stomach. At the time of his arrest, the government took certain properties from Onwubiko: $2,483 in United States currency, his Nigerian passport, his return air ticket on Nigeria Airways, and his black garment bag and its contents.

The next day, Onwubiko was presented with the DEA's "Notice of Abandonment" form, which indicated that "one black soft side garment bag" was in the possession of the DEA and would be "deemed" abandoned with title vesting in the United States if a claim—which "must conform to the authorities cited in 41 CFR 128–46.-50"—was not made within 30 days. Although Onwubiko claims to have requested that his property be sent to an address in Nigeria, DEA special agent Angel Calderon noted on the bottom of the notice of abandonment: "claims he has no family or forwarding [a]ddress". On a "Personal History Report" filled out that same day, however, Onwubiko provided a forwarding address in Birmingham, Alabama.

On October 2, 1990, Onwubiko's attorneys, the Legal Aid Society, sent a letter to agent Calderon requesting that they be provided with "certain items that Mr. Onwubiko was carrying in his luggage" before the garment bag was sent to the Nigerian address. The record does not reflect that the special agent ever responded to Legal Aid's inquiries; it is nonetheless undisputed that the garment bag was deemed by the government to have been abandoned by Onwubiko, and was retained by the government.

Onwubiko pled guilty before Judge Edward R. Korman to one count of illegal importation of heroin on November 2, 1990. *See* 21 U.S.C. § 952(a).

On November 4, 1990, Onwubiko sent a letter to agent Calderon (with a copy to Judge Korman), inquiring about the disposition of his property. He provided an address in the Republic of Benin. On November 10, Onwubiko sent another letter, this time directly to Judge Korman, which read as follows:

### A SPECIAL REQUEST

I was arrested on the 15th Sept 1990 by the DEA's officials at the airport. During my arrest my personal properties, passport, air return ticket including TWO THOUSAND, FOUR HUNDRED AND EIGHTY THREE US DOLLAR ($2483) was seized from me.

*This money was a short term loan given to me by one of my friend (MR KALU AMA) for the purchase of an industrial sewing machine for my wife's use and the balance for other necessary expenses while in the country.*

Due to the unbearable human conditions which my life is undergoing here in the prison and my family at home, I hereby appeal to you to use your position to order the DEA agent to release this money to me at the prison and send my property together with the unused return ticket with the first, second and third pages photocopies of my passport to enable my family get refund of the air ticket as they have no other means of livelyhood. The forwarding address [illegible] the property is [illegible]—MR BONIFACE D. AKWARA, CARRE 229 MISSEBO, BP 06–21 COTONOU, REP POP DU BENIN.

Your cooperation will be highly appreciated as it will go a long way to alleviate my suffering.

Thanks and God bless.

Yours faithfully,
Martin Onwubiko

The government disputes the authenticity of these letters, pointing out that although they appear in the record on appeal, they bear no filing stamp, and in any event, the government was unaware of them. The record also contains a similar letter, also dated November 10, 1990, which was file-stamped by the clerk's office of the Eastern District of New York, but did not contain the address in the Benin Republic.

Judge Korman treated this letter as a motion for return of property pursuant to Fed.R.Crim.P. 41(e), and directed the United States Attorney to show cause why Onwubiko's motion should not be granted. In a response letter dated December 20, 1990, the government made this representation:

> Onwubiko's passport, plane ticket and money are evidence in the case. They will be held as evidence until an order and judgment of conviction are entered.
>
> After conviction, Onwubiko's passport will be released to the Immigration and Naturalization Service, and his ticket and money will be held as property subject to forfeiture pursuant to 21 U.S.C. Section 853.

Onwubiko was sentenced on January 11, 1991, and an appropriate judgment of conviction and sentence was entered on January 23, 1991. On January 11, 1991, the date of sentencing, Judge Korman endorsed the government's response to the order to show cause by noting that Onwubiko's motion for return of his property was denied, "on the condition that, within 30 days of the date of this order, formal forfeiture proceedings are commenced."

On February 20, 1991, the DEA sent Onwubiko a "Notice of Seizure" which indicated that the $2,483 was seized for forfeiture under 21 U.S.C. § 881, "because it was used or acquired as a result of a drug-related offense." (emphasis in original). No such notice was sent regarding the air ticket. This pre-printed notice of seizure informed Onwubiko that he had the right to contest this summary forfeiture in United States District Court, or he could petition the DEA, via an administrative process, to remit his property. Judicial review, however, was available to Onwubiko only if he could post a $250 bond along with his claim of ownership. The administrative process, on the other hand, allows remission only as a matter of discretionary "grace".

Trying to utilize the administrative option, Onwubiko responded to the DEA's notice on March 25, 1991, with a document entitled "A PETITION FOR REMISSION OF FORFEITURE OF PROPERTY". Stating "under oath" that none of the enumerated properties "are, or were acquired through illegal or drug related means for the crime which I pled guilty", he requested the return of his luggage, which contained his "personal properties such as [his] clothing, wrist watch, jewelry and a Cannon [sic] camera", as well as "valuable documents". Onwubiko also petitioned for the return of his airline tickets and the $2,483 in U.S. currency; as to the latter, Onwubiko wrote that the money "was advanced to me as a short term loan by a friend Mr. Kaln [sic] Ama for the purchase of sewing machine in the united states; and I will furnish the government with the documentation relating to the loan if needed."

The DEA responded to Onwubiko's petition on April 12, 1991, stating:

> The referenced regulations [28 C.F.R. § 9.5(b) & (c)] explicitly prohibit remission of a forfeiture unless the petitioner establishes: a valid, good faith interest in the seized property as owner or otherwise; no knowledge that the property in which an interest is claimed was or would be involved in any violation of the law; no knowledge of the particular violation which subjected the property to seizure and forfeiture; no knowledge that the user of the property had any record for violating laws of the United States or of any state for a related crime; *and* that petitioner had taken all reasonable steps to prevent the illegal use of the property.

A review of the factual basis surrounding this seizure reveals that there was

probable cause to believe the property had been used in violation of the law. Therefore, pursuant to 28 CFR Section 9.5(a), as the Determining Official, I did not further consider whether the evidence was sufficient to support the forfeiture since the filing of a petition presumes a valid forfeiture. The burden of proof lies with the petitioner to establish that each of the requirements of the noted regulations have been satisfied. The petition submitted fails to meet these requirements.

Investigation reveals the forfeited currency was seized at an airport pursuant to a combination of some or all of the following factors tending to show evidence of illegal conduct: (1) cash purchases of airline tickets; (2) carrying unduly large amounts of cash currency; (3) traveling under an alias; (4) a destination of a source city for illicit drugs; (5) a short stay in proportion to time/distance of travel; (6) a nervous manner during the trip; and (7) no checked luggage. *See United States v. Sokolow,* [490] U.S. [1,] 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Although the petition did not meet minimum conditions for remission, as a matter of discretion, it was examined to determine whether extenuating circumstances existed warranting mitigation of the forfeiture. The petition, considered in its most favorable light, failed to justify such action.

(emphasis in original).

On May 6, 1991, Onwubiko petitioned the DEA for reconsideration of its decision, this time attaching (1) a cash voucher indicating the purchase of 2,483 U.S. dollars; (2) a "cash voucher" from Okebeh Trans-World Co., "Importers of Clothings" and other textiles, authorized by "K. Ama" and received by Martin S. Onwubiko, which indicated under "Description of Payment" that it was a "short term loan for the purchase of sewing machine"; and (3) an affidavit from Kalu Ama, sworn at the High Court of Lagos State, which noted that Ama had loaned Onwubiko the disputed monies "for the purchase of Sewing Machine".

The DEA was not convinced. Even though the DEA purported to have considered Onwubiko's request for reconsideration "in its most favorable light", the "lack of evidence contained in the request for reconsideration" and the fact "that there was probable cause to believe the property had been used in violation of law" led the DEA to deny Onwubiko's petition. The DEA added:

Investigation reveals that at the time of the seizure you had arrived at John F. Kennedy Airport in New York from Nigeria internally carrying 947.3 [*sic*] grams of heroin and were in possession of the $2,483 in currency. The facts and circumstances of the seizure are sufficient to establish probable cause that the forfeited currency was intended for use in facilitating drug transactions. Facilitation encompasses any activity making the prohibited conduct less difficult or more or less free from obstruction or hindrance. [citing cases].

Onwubiko subsequently filed another letter with the district court seeking return of his property. Judge Korman again treated Onwubiko's filings as a Fed.R.Crim.P. 41(e) motion and issued an order to show cause. The government responded (1) that Onwubiko had abandoned his luggage, (2) that Onwubiko's passport and air ticket were given to the Immigration and Naturalization Service so that he could leave the country if deported, and (3) that Onwubiko had no right to judicial review since he had elected to pursue the DEA's administrative remission processes.

Judge Korman again denied Onwubiko's motion, and a judgment consistent with this determination was entered on December 11, 1991. Onwubiko timely filed a notice of appeal on December 13, 1991.

## DISCUSSION

■ The district court should not have treated Onwubiko's later filings as a motion for return of property under Fed. R.Crim.P. 41(e). Rule 41(e) provides a method for return of seized property and suppression of evidence in a criminal case. After the case is concluded, a property

owner may have other rights under statutory or common law for return of property wrongfully seized, but he has no such right under rule 41(e) after conviction. *United States v. Price*, 914 F.2d 1507, 1511 (D.C.Cir.1990) (*per curiam*); *United States v. Hernandez*, 911 F.2d 981, 983 (5th Cir.1990) (*per curiam*); *United States v. Rapp*, 539 F.2d 1156, 1160 (8th Cir.1976); *Bartlett v. United States*, 317 F.2d 71, 71 (9th Cir.) (*per curiam*), *cert. denied*, 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 75 (1963); *United States v. One Mercedes Benz, VIN: WDBBA48D5JA087263*, 719 F.Supp. 595, 597 (E.D.Mich.1989). *But cf. Floyd v. United States*, 860 F.2d 999, 1002–03, 1006–07 (10th Cir.1988) (rule 41(e) motions are governed by equitable principles, and do not depend on the existence of a criminal proceeding). Indeed, Fed.R.Crim.P. 54(b)(5) provides that the Federal Rules of Criminal Procedure "are not applicable to * * * civil forfeiture of property for violation of a statute of the United States." *See United States v. Elias*, 921 F.2d 870, 875 (9th Cir.1990).

■ Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint. *Mora v. United States*, 955 F.2d 156, 158 (2d Cir.1992). *Cf. Grant v. United States*, 282 F.2d 165, 168 (2d Cir.1960) (Friendly, J.) ("We have said that such a motion 'was in effect a complaint initiating a civil action'") (quoting *Lapides v. United States*, 215 F.2d 253, 254 (2d Cir.1954)). Since Onwubiko is a *pro se* plaintiff, we are obliged to construe his pleadings and papers liberally. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) ("less stringent standards"); *LaBounty v. Adler*, 933 F.2d 121, 122 (2d Cir.1991) ("liberally"). *Cf. Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957) (detailed fact pleading not necessary). In so doing, we must determine whether Onwubiko can prove any "set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. at 521, 92 S.Ct. at 596. As will be seen below, we conclude that Onwubiko has stated claims for most of the relief that he has requested.

We first address Onwubiko's claim that he is entitled to the return of his passport and airline ticket. Since there are exclusion proceedings pending against Onwubiko, the government makes the following representation:

> Practically speaking, the government must retain the passport until exclusion proceedings are concluded so that, if Onwubiko is excluded, he will be able to be returned to his place of origin. Of course, if Onwubiko is not excluded, his passport and ticket will be returned to him.

As the government points out in this excerpt from its brief, the passport must be retained for practical reasons, at least for the time being. However, there is no reason for the government's continued retention of the ticket. After the government had represented, on December 20, 1990, that the money *and* the ticket would be forfeited, Judge Korman, on January 11, 1991, denied Onwubiko's motion for return of property, but did so on the condition that the government commence such formal forfeiture proceedings within 30 days.

■ While the government did commence summary forfeiture proceedings against the currency, it did not do so against the ticket. Since, as to the ticket, the government failed to satisfy the district court's stated condition, we conclude that the district court abused its discretion in its subsequent denial of Onwubiko's motion for the return of his ticket. Although the government now claims that the ticket is being held in order to return Onwubiko if he is found to be excludable, this does not excuse the government's utter disregard for the district court's order, which plainly required the government to initiate forfeiture proceedings as a condition of its denial of Onwubiko's motion. Nor does the government cite any authority to keep his ticket for the possible future use of sending him back to Nigeria. On remand, we instruct the district court to grant Onwubiko's motion to return his air ticket. Presumably, Onwubiko's request for a copy of the first three pages of his passport was intended to facilitate the refund of his air-

fare; on the remand, the district court should in the first instance make this determination, and if so, the government should be instructed to make such accommodations. We agree, however, that disposition of Onwubiko's passport must await the result of the pending exclusion proceedings.

In regard to Onwubiko's petition for return of the currency, the government offers little in substance, but argues that we lack jurisdiction to review the DEA's denial of remission. *See, e.g., In re the Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00) and One (1) 1982 Audi, Vehicle Identification Number WAUH00434CN044604,* 901 F.2d 1540, 1543–45 (11th Cir.1990) (citing cases). The government contends that since Onwubiko did not pay the $250 cost bond required by 19 U.S.C. § 1608 to force the government to bring a judicial forfeiture proceeding, Onwubiko has elected his remedy and should not now be heard to complain about the results of the administrative process.

In order to understand the relationship between "civil" forfeitures and summary, "administrative", forfeitures, a brief review of the statutory scheme is necessary. For property valued at $100,000 or less, the government may follow an administrative forfeiture process, such as was done here. An administrative forfeiture is commenced by publication of a notice of seizure and intent to forfeit property. 19 U.S.C. § 1607. A claimant has twenty days after the first publication of notice to file a claim and cost bond. 19 U.S.C. § 1608. A timely filing of the claim and cost bond stops the administrative process, *see* 21 C.F.R. § 1316.76(b), and the matter is transferred to the United States Attorney, who then must institute judicial forfeiture proceedings. 21 C.F.R. § 1316.78.

If a timely claim and cost bond is not submitted, the property is administratively forfeited at the end of the twenty-day period. 19 U.S.C. § 1609. However, a claimant may request "remission" (the DEA calls this a "pardon") of the forfeiture by submitting a petition to the DEA's Asset Forfeiture Section within 30 days of receipt of notice. 28 C.F.R. § 9.3. If the claimant

elects only this option, the DEA "shall presume a valid forfeiture." 28 C.F.R. § 9.5(a). The DEA's discretion in making a remission decision is cabined by the criteria set forth in 28 C.F.R. § 9.5.

▮▮▮▮ We reject the suggestion that we lack jurisdiction to review the DEA's administrative decisions. True, the eleventh circuit has characterized its judicial review power over such administrative decisions as "jurisdictional", *see In re $67,470.00,* 901 F.2d at 1544, but we do not agree with that rigid a view. We see the dispute as one involving what type of judicial review we have, rather than whether we have it at all.

Although the government is partially correct in making its jurisdictional argument, since an administrative forfeiture removes the *res* from the district court and, therefore, typically marks an end to the court's *in rem* jurisdiction, *see, e.g., United States v. Ten Thousand Dollars ($10,000) in United States Currency,* 860 F.2d 1511, 1513 (9th Cir.1988); nevertheless, an exception to this general rule lies if the property is taken accidentally, fraudulently, or improperly. *Id.* Put another way, if an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency. *See The Rio Grande,* 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874) ("We hold the rule to be that a valid seizure and actual control of the *res* by the marshal gives jurisdiction of the subject-matter, and that an accidental or fraudulent or improper removal of it from his custody, or a delivery to the party upon security, does not destroy jurisdiction.").

▮▮▮▮ Further, the district court has jurisdiction over Onwubiko's claim under the Tucker Act, 28 U.S.C. § 1346, which gives district courts original jurisdiction over various claims against the United States which do not exceed $10,000. Reading Onwubiko's *pro se* filings in the most favorable light possible, *see, e.g., LaBounty v. Adler,* 933 F.2d at 122, we conclude that Onwubiko has presented a claim for deprivation of property without due process, as well as a claim for abuse of agency discretion under its own regulations. Thus, he has a civil "claim against the United States, not ex-

ceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department". 28 U.S.C. § 1346(a)(2). Numerous courts have held that the Tucker Act is an appropriate vehicle for challenging procedurally-deficient forfeitures. *See, e.g., United States v. Ten Thousand Dollars ($10,000) in United States Currency,* 860 F.2d at 1514; *United States v. Rapp,* 539 F.2d at 1161; *Glup v. United States,* 523 F.2d 557, 559 n. 3 (8th Cir.1975); *Menkarell v. Bureau of Narcotics,* 463 F.2d 88, 90 (3d Cir.1972); *LaChance v. DEA,* 672 F.Supp. 76, 80–81 (E.D.N.Y.1987). *See generally* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 6.02, at 6–25 to 6–26 (1991). Although the Tucker Act "does not create any substantive right enforceable against the United States for money damages", *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), Onwubiko's claim might well be read as one under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for intentional deprivation of property without due process of law.

■ The Tucker Act claim, however, would present the district court with the limited issue of whether the government abused its discretion in denying remission, thus entitling Onwubiko to relief. *See United States v. One Tintoretto Painting,* 691 F.2d 603, 608 (2d Cir.1982) (explaining differences between civil forfeiture and summary administrative forfeiture). Reviewing the record on appeal, we conclude that Onwubiko is entitled to contest the forfeiture directly in district court, despite his failure to post a costs bond of $250. We lay the blame for this omission at the government's, not Onwubiko's, doorstep. The government was well aware that it had seized all of the money that Onwubiko, a visitor to the United States, had on his person. Their argument that he nonetheless should have posted a $250 costs bond is Dickensian in its irony: The government took all of Onwubiko's money, but thereafter conditioned his right to put the government to its burden of proof on the payment of $250. We thus conclude

that "the filing of a $250 bond was an insuperable obstacle to [Onwubiko], and may be too great an obstacle to many [people] seeking to force the government to proceed with forfeiture proceedings." *Lee v. Thornton,* 538 F.2d 27, 32 (2d Cir.1976).

■ On remand, the district court should appoint counsel for Onwubiko, *see Hodge v. Colon,* 802 F.2d 58, 61 (2d Cir. 1986), so that he may defend his property from forfeiture in a trial. In this regard, we do not know what a full trial will develop; we do not even know whether the government will be able to make its featherweight initial showing that the currency was used to "facilitate" the drug offense. On this limited record now before us it appears that the DEA relied on two "facts and circumstances" to conclude that the $2,483 was used to "facilitate" a drug crime: (1) Onwubiko was carrying the heroin, and (2) Onwubiko was carrying the currency. These facts alone would not be enough for the government to meet its minimal burden of establishing probable cause that the property seized "facilitated" the offense: the forfeiture statute "requires something more than an incidental or fortuitous contact between the property and the underlying illegal activity". *United States v. Premises Known as 3639–2nd St., N.E., Minneapolis, Minnesota,* 869 F.2d 1093, 1096 (8th Cir.1989). Rather, "[p]robable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Id.* at 1097. This view squares with the "Joint Explanatory Statement" of the facilitation provision in the legislative history of the Psychotropic Substances Act of 1978:

Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a *substantial connection* between the property and the underlying criminal activity which the statute seeks to prevent.  * * * [A]ny moneys, negotiable instruments, or securities that were used or intended to be used to facilitate any violation of the Controlled Substances Act would be forfeitable *only if they had some substantial connec-*

*tion to, or were instrumental in, the commission of the underlying criminal activity* which the statute seeks to prevent.

*Joint Explanatory Statement of Titles II and III of the Psychotropic Substances Act,* 124 Cong.Rec. S17647, *reprinted in* 1978 U.S.C.C.A.N. 9496, 9518, 9522 (emphasis added).

Onwubiko's crime was importing heroin, not buying it. Common sense tells us that these circumstances are not enough for the government to prove a substantial nexus between the currency and the crime. Since Onwubiko still had the heroin in his stomach at the time of the seizure of currency, the money obviously did not represent the fruits of a drug sale. Indeed, it bears noting that Onwubiko had completed the crime of illegal importation of heroin, yet he still had the entire amount of money with which he came to this country. Surely, "common sense" would tell us that, at least in this context, money must be spent in order to "facilitate" a drug crime. Thus, even the strongest "facilitation" argument seemingly available to (but not made by) the government—that the money would be used to support Onwubiko until he passed the heroin-filled balloons—would not support a finding that the money "facilitated" the drug crime. Otherwise, the government would be justified in forfeiting the clothes off the back of every drug criminal, a result that we hope never comes to pass. In any event, the facts of Onwubiko's case, as presently developed, would not support the conclusion that the currency "facilitated" the drug crime. *Compare United States v. All Monies ($477,048.62) in Account No. 90-3617-3,* 754 F.Supp. 1467, 1473 (D.Hawaii 1991) (surveying the scope of facilitation theory).

Finally, as to his garment bag, there is apparently some dispute over whether Onwubiko provided the appropriate address so that the DEA could return the bag to him. On remand, as part of the forfeiture proceedings we order, the district court should determine the facts underlying Onwubiko's claim in order to determine whether he in fact abandoned his luggage.

## CONCLUSION

"Forfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law." *United States v. One Ford Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864, 83 L.Ed. 1249 (1939). Despite this fifty-odd-year-old command, forfeitures are becoming more frequent in number and more summary in nature. The summary forfeiture of Onwubiko's property was within neither the letter nor the spirit of the law, and we cannot countenance it. Accordingly, the judgment of the district court is reversed, and the case is remanded with instructions to (1) direct the DEA to return Onwubiko's return air ticket, (2) appoint counsel for Onwubiko, (3) hold a civil forfeiture trial as to the disputed $2,483 in United States currency, and (4) determine whether Onwubiko in fact abandoned his black garment bag.