**Alfredo LINAREZ, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Drug Enforcement Administration, Marks Brothers Jewelers, Incorporated, and Village of Lombard Police Department, Defendants–Appellees.**

No. 92–1794.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1993.

Decided Aug. 9, 1993.

Rehearing Denied Sept. 2, 1993.

Leonard S. Whitcup (argued), George D. Levy, Whitcup & Arce, Chicago, IL, for plaintiff-appellant.

Thomas P. Walsh, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Ernest Y. Ling, Criminal Div., Daniel E. May (argued), Civil Div., Appellate Section, Chicago, IL, for defendants-appellees.

Before COFFEY, and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Alfredo Linarez filed a complaint in district court seeking to recover $12,417 in United States currency that the Drug Enforcement Administration ("DEA") seized from him and administratively forfeited to the United States under the authority of 21 U.S.C. §§ 881(a)(6), 881(b) (1988 & Supp. III 1991), and 19 U.S.C. §§ 1602–1618 (1988 & Supp. III 1991). Linarez also sought to recover $634 from Marks Brothers Jewelers and $187 from the Village of Lombard, Illinois Police Department. The district court dismissed Linarez's complaint for lack of subject matter jurisdiction. We affirm.

I. BACKGROUND

On September 4, 1990, an employee of the Cole–Taylor Bank in Lombard, Illinois discovered a counterfeit $100 bill among a large deposit that had been made to the bank by

Marks Brothers Jewelers. The bank contacted Detective John Lavery of the Lombard Police Department. Lavery learned that the $100 bill had come from one Alfredo Linarez, a frequent customer of the jewelry store, who had paid $13,000 in United States currency for a Rolex watch a few days earlier. He also learned that Linarez and his son, Eduardo, recently had paid cash for four other Rolex watches that were valued at $5,000 apiece. A trained narcotics-detection dog was brought to the bank to examine the $100 bill, and the dog alerted positively to the presence of a controlled substance on the bill. When it examined the balance of the $13,000 that the bank still had in its possession (a sum of $11,000) the dog once again alerted positively to the presence of a controlled substance on the currency.

On September 6, 1990, Detective Lavery learned that Linarez and Eduardo had returned to Marks Brothers to purchase a Rolex brand ring for $1200 cash. Lavery seized the currency after a trained narcotics-detection dog alerted positively to the presence of a controlled substance on it. The next day, pursuant to a search warrant that was issued by an Illinois state court, Lavery seized the $11,000 from the Cole–Taylor Bank. On September 12, 1990, Lavery conducted a consensual search of Linarez's wallet and found $217 cash. Once again, a narcotics-detection dog alerted positively to the presence of a controlled substance on the currency and, once again, Lavery seized it.

On July 4, 1991, the above-described currency (a total of $12,417) was transferred to the DEA for institution of federal forfeiture proceedings "because it had been used or acquired to facilitate a drug related offense."[1] It is difficult to understand the issues in this appeal without first understanding the statutory scheme for forfeiture proceedings, so we give a brief explanation here.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, Title II, § 511, 84 Stat. 1276 (codified as amended at 21 U.S.C. § 881(a) (1988 & Supp. III 1991)), provides for the civil forfeiture of property that has been used either to facilitate narcotic transactions or to acquire the proceeds of such criminal activity. To be subject to forfeiture under the Act, the property must fall into one of eight categories defined by 21 U.S.C. § 881(a). One of these categories, § 881(a)(6), provides for the forfeiture of illicitly obtained wealth.[2]

Section 881(b) authorizes the seizure of any property that is subject to forfeiture under § 881(a) "upon process issued pursuant to the Supplemental Rules of Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property." Section 881(b)(1) goes on, however, to provide that seizure may be made without the requisite process if the seizure is incident to a search under a search warrant. Section 881(d) provides that the forfeiture of property seized in accordance with § 881(b) is to be accomplished through the procedures set forth by the customs laws at 19 U.S.C. §§ 1602–1618. Under the customs laws as they existed at the time of the seizure in this case, seized United States currency of $100,000 or less was subject to administrative forfeiture to the United States by the seizing agency without judicial involvement, but if the currency amounted to greater than $100,000, judicial forfeiture was required. 19 U.S.C. §§ 1607(a)(4), 1610; 21 C.F.R. §§ 1316.75, 1316.78 (1992).[3] The

---

**1.** Neither Linarez nor Eduardo was charged with any criminal offense under state or federal law.

**2.** Section 881(a)(6) provides that:
  (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
  *  *  *  *  *  *
  (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**3.** The dollar amount has been raised to $500,000. See Pub.L. No. 101–382, § 122(1) and (6), 104 Stat. 642 (codified at 19 U.S.C. § 1607 (1988 & Supp. III 1991)).

amount of money that was seized in this case, $12,417, obviously would allow the institution of administrative forfeiture proceedings.

To initiate administrative forfeiture proceedings, the seizing agency, in this case the DEA, must publish notice of the seizure and of its intent to forfeit the property once a week for at least three successive weeks in a newspaper of general circulation in the judicial district in which the forfeiture proceeding is brought. 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75 (1992). In addition, the agency must give personal written notice of the seizure and information on the applicable procedures to any party who appears to have an interest in the seized property. 19 U.S.C. § 1607(a).

The customs laws also provide the procedures for contesting an administrative forfeiture. A person claiming an interest in the seized property has two choices. First, he can file a petition for remission or mitigation of the forfeiture within thirty days after his receipt of the notice of seizure. 19 U.S.C. § 1618; 21 C.F.R. § 1316.79 (1992). Alternatively, he "may at any time within twenty days from the date of the first publication of the notice of seizure file ... a claim stating his interest therein" along with a cost bond of $5000 or ten percent of the value of the property, whichever is less, but not less than $250. 19 U.S.C. § 1608. The proper and timely filing of a claim and cost bond has the legal effect of halting the administrative proceedings and forcing the seizing agency to refer the matter to the United States Attorney for the institution of judicial forfeiture proceedings. 19 U.S.C. §§ 1603(b), 1608; 21 C.F.R. § 1316.76(b) (1992). Failure of an interested party to file the requisite claim and bond, however, results in a declaration of forfeiture by the seizing agency and the vesting of title in the United States free and clear of any liens and encumbrances. 19 U.S.C. § 1609(b); 21 C.F.R. § 1316.77 (1992).

The DEA on August 12, 1991, sent a notice of seizure by certified mail to Linarez's last known address, "2414 Oak Park, Berwyn, Illinois." This notice expressly stated that notice of the seizure of the $12,417 would be published three successive weeks in *USA Today* beginning on August 21, 1991. The notice described in detail the procedures that Linarez could utilize to contest the forfeiture. It stated that Linarez could submit a petition for remission or mitigation within thirty days from his receipt of the notice and apprised him that if he desired to file a claim of ownership of the currency with the DEA, he had to do so within twenty days of the first date of publication of the notice of seizure in the *USA Today*. The notice also set forth, in bold text, the address to which Linarez should send any petition for remission or mitigation, claim of ownership and bond, or other correspondence. On August 19, 1991, the DEA received a signed certified mail return receipt reflecting delivery of the notice to Linarez's address.

Linarez did not avail himself of the administrative procedures for challenging the seizure and proposed forfeiture by filing a petition for remission or mitigation within thirty days after August 19, 1991, or by filing a claim of ownership and bond with the DEA within twenty days after August 21, 1991. Instead, on September 11, 1991, he filed a complaint in the district court seeking to recover the $12,417, as well as $634 from Marks Brothers Jewelers and $187 from the Village of Lombard Police Department, money that he claimed the parties had retained for their own use without justification. He alleged that the DEA had seized the currency without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizures. The government moved to dismiss Linarez's complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment. It asserted that Linarez's failure to file a claim of ownership and bond within twenty days after August 21, 1991, deprived the district court of jurisdiction to adjudicate the complaint. In response to the government's motion Linarez moved for summary judgment and made two allegations that he had not made in his complaint: that the DEA had failed to publish the notice of seizure in compliance with 19 U.S.C. § 1607(a), and that the delay between seizure of the currency in September of 1990 to the commencement of forfeiture proceedings in July of 1991 had deprived him of his

right to a speedy trial. He did not respond to the government's jurisdictional arguments. The district court granted the government's motion to dismiss, stating that it lacked jurisdiction over Linarez's complaint because Linarez sought recovery of the seized currency, and "an administrative forfeiture proceeding is the exclusive recovery forum for items that are not being held for use as evidence."

## II. ISSUES

Linarez argues on appeal that the district court erroneously concluded that it lacked subject matter jurisdiction to adjudicate his constitutional challenges to the seizure and subsequent forfeiture of the currency. He also argues that the DEA lacked jurisdiction to forfeit the currency because the currency was improperly transferred from the Lombard Police Department to the DEA.

## III. DISCUSSION

■■■■ We review *de novo* the district court's dismissal of Linarez's complaint for lack of subject matter jurisdiction. *Joyce v. Joyce*, 975 F.2d 379, 382 (7th Cir.1992). Linarez alleged in his complaint and argues in his appellate brief that the district court had jurisdiction to resolve his constitutional challenges to the seizure and subsequent forfeiture of the $12,417 based on two statutory provisions, 28 U.S.C. §§ 1355 and 1356 (1988).[4] Section 1355 gives district courts "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any act of Congress," except matters that are within the jurisdiction of the Court of International Trade. Section 1356 gives the district courts "original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction," again, except matters that are within the jurisdiction of the Court of International Trade. Certainly with these provisions Con-

gress has precluded the possibility of concurrent jurisdiction in a federal court and a state court over a seizure and civil forfeiture accomplished under 21 U.S.C. § 881. *See United States v. Plainbull*, 957 F.2d 724, 726 (9th Cir.1992); *United States v. $79,123.49 in United States Currency*, 830 F.2d 94, 98 (7th Cir.1987); *cf. United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120, 123 (7th Cir.1991) (district court lacked jurisdiction to forfeit seized property where there was pending forfeiture proceeding in state court). Although the provisions are silent on the issue, we are convinced that Congress has precluded the possibility of concurrent jurisdiction over civil forfeitures in a district court and a federal administrative agency.

The clear and unambiguous language of 28 U.S.C. § 1356, provides that jurisdiction over challenges to the legality of the seizure of property under the authority of § 881 initially vests in the district courts. And the equally pellucid language of 28 U.S.C. § 1355, provides that the district courts initially have jurisdiction over the subsequent civil forfeiture proceedings as well. But, as noted above, § 881(d) makes the customs laws, 19 U.S.C. §§ 1602–1618, applicable to civil forfeiture proceedings. The practical effect of this is to limit the jurisdiction of the district courts over forfeitures of certain types of property. One of these types of property, we have noted, is $500,000 or less in United States currency. *See* 19 U.S.C. § 1607(a)(4). By initiating administrative forfeiture proceedings pursuant to 19 U.S.C. § 1607, the agency that seized the property divests the district court of its jurisdiction over the forfeiture proceedings. The district court remains without jurisdiction over the forfeiture *unless an interested party files a claim of interest and posts a bond with the agency* within twenty days from the date of the first publication of the notice of seizure pursuant to 19 U.S.C. § 1608 and 21 C.F.R. § 1316.76 (1992). *If the claim is not filed and the bond not posted, the forfeiture process continues administratively, without ju-*

---

4. Linarez also asserts, for the first time on appeal, that the district court had jurisdiction to adjudicate his complaint pursuant to 28 U.S.C. § 1331. By failing to present this argument to

the district court, Linarez has waived it for purposes of this appeal. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

*dicial intervention.* See 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77(a) (1992).

The weight of authority supports this proposition. *See United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 479 (2d Cir. 1992); *United States v. Price*, 914 F.2d 1507, 1511 (D.C.Cir.1990); *United States v. Castro*, 883 F.2d 1018, 1019–20 (11th Cir.1989); *United States v. $83,310.78 in United States Currency*, 851 F.2d 1231, 1235 (9th Cir.1988); *In re Harper*, 835 F.2d 1273, 1274–75 (8th Cir.1988). *United States v. Price* is representative of these cases. There, Price was arrested and indicted for violating the Controlled Substances Act. He filed a motion pursuant to Federal Rule of Criminal Procedure 41(e) for the return of currency and jewelry that had been found at the time of his arrest.[5] Before the district court had taken any action on the Rule 41(e) motion, Price received notice that the DEA intended to seek administrative forfeiture of the cash and jewelry. He subsequently pleaded guilty of conspiring to distribute cocaine. 914 F.2d at 1507–08. At Price's sentencing the district court denied the Rule 41(e) motion, ruling that because the DEA had initiated an administrative forfeiture proceeding, district court was not the proper forum in which Price might seek the return of his property. *Id.* at 1508. The court of appeals affirmed, holding that once the government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the district court loses jurisdiction to resolve the issue of return of property. *Id.* at 1511. Price's remedy, the court stated, was to challenge

the forfeiture in the administrative proceeding, and his failure to do so did not confer jurisdiction on the district court. *Id.*

Similarly, in this case Linarez should have directed his challenge to the forfeiture of the $12,417 to the DEA, and not to the district court. The district court in this case, like the district court in *Price*, was without jurisdiction to resolve challenges to the seizure and proposed forfeiture. The DEA divested the court of jurisdiction over the forfeiture by mailing and publishing a notice of its intent to forfeit the currency. Had Linarez desired to litigate his challenges to the seizure and forfeiture in district court, he could have done so by availing himself of the administrative procedures first. Linarez could have filed a claim of ownership and bond within twenty days after August 21, 1991, which would have forced the DEA to institute *judicial* forfeiture proceedings. 19 U.S.C. §§ 1603, 1608, 21 C.F.R. § 1316.76(b) (1992). Nevertheless, he allowed the administrative proceeding to finalize and then petitioned the district court for relief. Like in *Price*, Linarez's decision to bypass the administrative proceedings did not confer jurisdiction on the district court.

True, unlike the plaintiffs in *Price* and the other cases cited above, Linarez did not challenge the seizure and forfeiture of his property by filing a Rule 41(e) motion in district court, but rather by filing a civil complaint.[6] We believe that this distinction is unimportant. The basis for the decision in *Price* and analogous decisions is not that a Rule 41(e) motion is an incorrect legal theory for chal-

---

**5.** Rule 41(e) states:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

**6.** Because there were no criminal proceedings against Linarez, his filing in the district court cannot be characterized as a Rule 41(e) motion. Federal Rule of Criminal Procedure 54(b)(5) forecloses this possibility by stating that the Federal Rules of Criminal Procedure "are not applicable to ... civil forfeiture of property for violation of a statute of the United States." *See United States v. Onwubiko*, 969 F.2d 1392, 1397 (2d Cir.1992); *United States v. Elias*, 921 F.2d 870, 875 (9th Cir.1990). *But see Floyd v. United States*, 860 F.2d 999, 1002–03, 1006–07 (10th Cir.1988) (Rule 41(e) motions are governed by equitable principles and do not depend on the existence of a criminal proceeding).

lenging a forfeiture in district court, but rather that a forfeiture cannot be challenged in district court under any legal theory if the claims *could have* been raised in an administrative proceeding, but *were not. See, e.g., Price,* 914 F.2d at 1511 ("In this case ... Price could have pursued a claim for his property in the administrative forum."); *Jeep Wrangler,* 972 F.2d at 479 ("Here, the administrative forum afforded the claimant the opportunity to raise all objections to the seizure and the lack of a judicial remedy deprived him of nothing."); *In re Harper,* 835 F.2d at 1274 ("Although Harper had knowledge of the pending forfeiture proceeding, he allowed the matter to finalize without challenging the forfeiture or seeking a stay of the proceedings."). That is the case here. In his complaint, Linarez alleged that his currency was seized without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizures. He could have raised this claim as well as the ones he raised in his reply to the government's motion to dismiss (that the notice of seizure was deficient and that he was deprived of his Sixth Amendment right to a speedy trial) in the administrative proceeding. Alternatively, he could have raised these claims in district court *after* filing a claim of interest and posting a bond with the DEA. Linarez was aware of these procedures, but chose not to avail himself of them. Although he contends that the published notice of seizure was defective because it did not give the name and telephone number of a DEA official to whom he could address questions, he does not dispute that he received actual notice of the seizure, informing him of the dates of publication and the steps that he could take to contest the forfeiture.

■ Some courts of appeals have recognized that district courts retain jurisdiction over forfeiture proceedings, even if conducted in an administrative forum, based upon the equitable jurisdiction of the federal courts. Most of the decisions discuss a district court's exercise of equitable jurisdiction in the context of a Rule 41(e) motion, *see, e.g., Frazee v. IRS,* 947 F.2d 448, 449–50 (10th Cir.1991); *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1103 (9th Cir. 1990); *Castro,* 883 F.2d at 1020–21; *Floyd v.*

*United States,* 860 F.2d 999, 1003 (10th Cir. 1988); *In re Harper,* 835 F.2d at 1274, but at least one decision discusses equitable jurisdiction in the context of a challenge to a forfeiture by way of a civil complaint. *See Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir.1992). We have yet to address the issue whether a district court has equitable jurisdiction to resolve a challenge to a forfeiture in the context of either a Rule 41(e) motion or a civil complaint once administrative forfeiture proceedings have commenced, and it is unnecessary for us to do so in this case. If a district court does retain equitable jurisdiction over an administrative forfeiture proceeding, the court's decision to invoke it is governed by equitable principles. *See In re Harper,* 835 F.2d at 1274; *Floyd,* 860 F.2d at 999; *Castro,* 883 F.2d at 1020; *cf. Onwubiko,* 969 F.2d at 1399 (permitting challenge to forfeiture in district court even though plaintiff had failed to post bond because DEA had seized all of plaintiff's money and so the filing of a bond was an "insuperable obstacle" to plaintiff). Thus the individual asking a district court to invoke its equitable jurisdiction must show that he had an inadequate legal remedy and that irreparable injury will result if the court does not act. *See Frazee,* 947 F.2d at 449–50; 3 CHARLES A. WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 673, at 762 (2d ed. 1982). Linarez cannot show that he had an inadequate legal remedy, for he could have sought recovery of his currency in the administrative proceeding by raising the very same claims that he raised in his complaint in the district court.

In sum, the district court was divested of jurisdiction over the forfeiture of Linarez's currency when the DEA instituted administrative forfeiture proceedings. Linarez did not return jurisdiction to the district court by filing a claim of interest and posting a bond with the DEA within twenty days after August 21, 1991, the first day on which the DEA published a notice of forfeiture. Because the DEA had jurisdiction of the forfeiture, Linarez could not seek recovery of his currency in the district court. Additionally, there was no basis for the court to invoke equitable jurisdiction over Linarez's claim

that the seizure of his currency violated the Fourth Amendment, that the delay between the seizure and the forfeiture violated his Sixth Amendment right to a speedy trial, or that the DEA's notice of seizure was deficient. He could have raised any or all of these claims in the administrative proceeding.

We can be briefer with our discussion of Linarez's remaining claim. Linarez claims that the transfer of the $12,417 from the Lombard Police Department to the DEA was unauthorized under *United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120 (7th Cir.1991). In that case the local police officers arrested the claimant and seized her van. Four days later the police department requested by letter that the Federal Bureau of Investigation ("FBI") initiate forfeiture proceedings. The FBI did so, and the police department relinquished custody of the van to agents of the FBI. The claimant notified the FBI that she desired to contest the forfeiture, and the proceedings moved to federal court. *Id.* at 121. We held that the district court lacked jurisdiction to order forfeiture of the van because at the time the proceedings moved to federal court, a state forfeiture action was pending and, thus, the state court had jurisdiction over the van to the exclusion of the federal court. *Id.* at 122. We noted that under Illinois law, the local police department could not simply turn over to the FBI the van that it had seized; the department was required to obtain an order from a state court authorizing it to do so. *Id.* Linarez argues that in this case, as in *C–20 Van*, the transfer of the seized property from local police to federal authorities was improper because the local police failed to secure an order from a state court authorizing the transfer. We recognize that it is, indeed, unclear how the Lombard Police Department accomplished the transfer of the currency to the DEA. But Linarez raises this issue for the first time in his reply brief before this court. He neglected to raise it in his complaint. At oral argument, Linarez asserted that he raised the issue in his complaint by alleging that "[t]he seizure of the aforesaid

funds was without a warrant, was without probable cause, was without any arrest being made, of any breach of the peace, and Plaintiff has not been charged with any offense under 21 U.S.C., 19 U.S.C. or any criminal statute." We fail to see how this allegation has anything to do with the issue whether the transfer of the property from the police department to the DEA was improper. By neglecting to raise the issue in the trial court, Linarez cannot raise it here as a ground for reversal. *Christmas v. Sanders,* 759 F.2d 1284, 1291 (7th Cir.1985); *cf. Paul v. United States,* 929 F.2d 1202, 1203 n. 1 (7th Cir.1991) (declining to consider whether the transfer of currency from local police to the DEA was unauthorized because the plaintiff did not raise the issue in his complaint).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Linarez's complaint for lack of subject matter jurisdiction is AFFIRMED.