**UNITED STATES of America, Appellee,**

v.

**Joselyn Antonio MENDEZ–DE JESUS,
Defendant, Appellant.**

No. 95–2063.

United States Court of Appeals,
First Circuit.

Heard Feb. 28, 1996.

Decided May 30, 1996.

Vilma Maria Dapena, Assistant Federal Public Defender, with whom Benicio Sanchez Rivera, Federal Public Defender, was on brief for appellant.

Jose F. Blanco–Torres, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jose A. Quiles,

**2**

Senior Litigation Counsel, were on brief for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

Defendant Jocelyn Antonio Mendez-de Jesus entered a conditional plea of guilty to re-entering the United States after being deported subsequent to a felony conviction, 8 U.S.C. § 1326(a) & (b)(1), reserving his right to appeal the district court's denial of his motion to suppress his identification and immigration record. Finding no error below, we affirm.

## BACKGROUND

Three boats carrying illegal aliens from the Dominican Republic landed in the vicinity of Rincon, Puerto Rico in the late hours of December 12 and early hours of December 13, 1994. On the morning of December 13, two private citizens brought the defendant and an unknown female to the police station in Rincon. Border Patrol Agent Hector Lugo of the Immigration and Naturalization Service (INS) was there already in order to interview persons who had been picked up from the boats. The citizens reported to Lugo that the defendant and his companion were not known to them and appeared to be lost.

Lugo suspected that the female passenger was an illegal alien: she had damp and dirty clothing, ragged hair, and an odor associated with urine and defecation on boats. Mendez, on the other hand, did not give the impression of having recently arrived illegally via boat. He appeared tidy, denied understanding Spanish and told Lugo that "I'm from here." Lugo commenced questioning the woman, who, instead of answering, continually looked at Mendez. Lugo asked if she knew Mendez and she responded affirmatively. Mendez also acknowledged knowing the woman, saying that they met in the Dominican Republic. Eventually, the woman admitted that she entered Puerto Rico illegally that morning.

At that time, Lugo asked Mendez for identification and was given his resident alien registration card. He brought Mendez inside the station and, while awaiting verification of the registration card, began interrogating him. Shortly thereafter, he received information that Mendez had previously been deported.

The district court denied Mendez's motion to suppress, but, on his motion for reconsideration, found that Lugo lacked probable cause to further detain or interrogate Mendez after receiving his alien registration card and, therefore, suppressed all statements made thereafter. The court refused to suppress the card itself or the corresponding INS records that documented his previous deportation.

## DISCUSSION

### A. *Standard of Review*

■ Our review of a district court's decision to grant or deny a suppression motion is plenary. *United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir.1996). We scrutinize the court's factual findings, including credibility determinations, for clear error, *United States v. Valle*, 72 F.3d 210, 214 (1st Cir. 1995), and will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it. *United States v. de Jesus-Rios*, 990 F.2d 672, 677 (1st Cir.1993).

### B. *Fourth Amendment Claims*

■ In an effort to invoke the exclusionary rule, Lugo alleges two violations of the Fourth Amendment. First, he contends that he was illegally arrested and brought to the police station. Second, he argues that Lugo's request for his identification constituted an unconstitutional seizure.

■ We can quickly dispose of the first issue. Mendez was brought to the police station by two private citizens. While the seizure of Mendez may have assisted the government, there is no suggestion that the government initiated or participated in the citizen action. In the absence of governmen-

tal action, the Fourth Amendment does not apply. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989) (Fourth Amendment does not apply to private action unless private party "acted as an instrument or agent of the Government"); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

■ Mendez's alternative claim fares no better. He contests the court's finding that Lugo's authority to ask for identification derived from 8 U.S.C. § 1357(a)(1), which provides that an immigration officer may, without warrant, "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." In support, he cites the principle that an individual may not be detained for questioning about citizenship absent reasonable suspicion that the person is an illegal alien, *see United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975), and points to Lugo's testimony that he had the impression that Mendez was a United States citizen. While this particular argument concerning the applicability of § 1357(a)(1) is not without force, it is ultimately unavailing because the court's findings clearly demonstrate that Lugo had reasonable suspicion that Mendez was violating the immigration laws.

■ It is well settled that, based on reasonable and articulable suspicion, an officer may make a brief stop or seizure of an individual to investigate suspected past or present criminal activity. *McCarthy*, 77 F.3d at 529.[1] The determination of whether an officer acted reasonably requires two subsid-

iary inquiries: 1) whether the officer's action was justified at its inception; and 2) whether the action taken was reasonably related in scope to the circumstances justifying the interference in the first place. *Id.* at 530 (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968)). This determination demands examination into the totality of the circumstances confronting the officer at the time of the stop. *Id.*

Lugo testified that, at the time of his request for Mendez's identification, he was aware that 1) three boats carrying illegal aliens had arrived in the area within the previous 24 hours; 2) Mendez and a woman had been brought to the station by citizens who reported that the couple looked lost and unfamiliar; 3) the woman appeared to be an illegal alien, though Mendez did not; 4) when asked questions the woman looked to Mendez for guidance; 5) Mendez and the woman admitted knowing each other; and 6) the woman admitted to being an illegal alien.[2] Lugo maintained that, based on these circumstances, he believed that Mendez was assisting the woman in violation of the immigration laws.

The court credited this testimony and determined that "[t]hese discoveries and observations further supported a reasonable suspicion of alienage and formed the basis for a suspicion of illegal assistance." We agree. In this context, Lugo's request for identification was a reasonable and minimal intrusion directly related to his suspicions, and did not violate the Fourth Amendment. As such, the district court properly denied Mendez's mo-

---

1. In *INS v. Delgado*, the Court stated that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984). The Court added, however, that such an encounter may constitute a detention or seizure if "the circumstances ... are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded." *Id.* Though perhaps unnecessary, for purposes of this case we will assume without deciding that the circumstances surrounding Lugo's request for identification

constituted a seizure under the Fourth Amendment.

2. Mendez lodged hearsay objections to Lugo's account of the woman looking at Mendez and her statement that she knew him, which were properly overruled. The look was nonverbal conduct not intended as an assertion, and both the look and statement were offered for their effect on Lugo's understanding of the unfolding events—i.e., his reasonable suspicion—and not to prove that the woman and Mendez actually knew each other. As such, his account was not hearsay. *See* Fed.R.Evid. 801(a) & (c).

tion to suppress his identification and immigration record.[3]

*Affirmed.*

---

**3.** The district court alternatively found that, even in the face of a Fourth Amendment violation, the "body" or identity of a defendant is never suppressible. *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984); *United States v. Orozco–Rico,* 589 F.2d 433, 435 (9th Cir.1978). Because we find no Fourth Amendment violation, at least up to the point that Lugo received Mendez's alien registration card, we need not address this conclusion.