Laconia Savings Bank v. USA          CV-00-005-M    06/16/00  P
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Laconia Savings Bank,
      Plaintiff

      v.                                    Civil No. 00-05-M
                                            Opinion No. 2000 DNH 140
United States of America,
      Defendant


                         **O R D E R**


      This civil litigation arises out of the administrative

forfeiture of a 1997 Dodge Viper by the United States Department

of Treasury.  Invoking the provisions of 28 U.S.C. § 1331 and the

Administrative Procedures Act, 5 U.S.C. § 702, Laconia Savings

Bank ("LSB") filed an action seeking a judicial declaration that

the forfeiture of that vehicle, in which LSB had a security

interest, was invalid, and an order compelling the government "to

return the proceeds obtained from plaintiff's property."

Complaint at 4.  The government moves for summary judgment as to

a limited portion of LSB's complaint and moves to dismiss the

balance of that complaint, saying that the court lacks subject matter jurisdiction. LSB objects.

**Standard of Review**

I. <u>Motion to Dismiss</u>.

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12 (b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists." <u>Stone v. Dartmouth College</u>, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing <u>O'Toole v. Arlington Trust Co.</u>, 681 F.2d 94, 98 (1st Cir. 1982); C. Wright & A. Miller, 5 Federal Practice and Procedure § 1350, at 555 (1969 & Supp. 1987)). Furthermore, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." <u>Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.</u>, 676 F. Supp. 399, 402 (D.N.H. 1987); <u>see</u> <u>also</u> <u>Richmond, Fredericksburg & Potomac R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir.

2

1991) <u>cert. denied</u>, 503 U.S. 984 (1992); <u>see</u> <u>also</u> <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990).

Nevertheless, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." <u>Richmond</u>, 945 F.2d at 768 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Id.</u> (citing <u>Trentacosta v. Frontier Pacific Aircraft Indus., Inc.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987)).

II. <u>Summary Judgment</u>.

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling upon a party's motion for summary judgment,

the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

## Background

Viewed with appropriate deference to LSB, the material facts appear as follows. According to the government, in 1996, Isaiah Moultrie purchased a 1996 Dodge Viper in New York, using a false name and social security number. A substantial portion of the purchase price was financed by Sun Star Acceptance Corporation, which was shown as a secured lien holder on the vehicle's certificate of title. Subsequently, however, Moultrie (apparently posing as the individual in whose name the vehicle was titled) applied for a Virginia title, saying that he was selling the vehicle to "Isaiah Moultrie." He provided a forged letter, ostensibly from Sun Star, representing that the first lien had been discharged. Accordingly, Virginia authorities

4

issued a new certificate of title in Moultrie's name, showing that he owned the vehicle free of any outstanding liens.

In October of 1997, Moultrie purchased a 1997 Dodge Viper from Fitzgerald Dodge, in Laconia, New Hampshire. In connection with his purchase of that vehicle, Moultrie applied for credit from LSB. The credit application submitted to LSB represented that Moultrie was making a $35,000 down payment toward the vehicle's $74,016 purchase price and requested financing of the balance (approximately $39,000). It also represented (erroneously) that Moultrie's purchase was a "cash" transaction, and no trade-in vehicle was involved. In fact, it appears that Moultrie turned over to Fitzgerald Dodge the 1996 Viper (worth approximately $50,000), applying $35,000 toward the purchase of the 1997 Viper, and taking $15,000 in cash. LSB approved Moultrie's request for credit and extended him financing in the amount of $39,031. Moultrie executed a retail installment contract and security agreement, and a certificate of title

5

issued for the 1997 Viper showing that LSB held a perfected first lien on the vehicle.

On April 6, 1998, Special Agent Michael Mantyla, of the United States Secret Service, obtained a seizure warrant for Moultrie's 1997 Viper, after a United States Magistrate Judge concluded that there was probable cause to believe that the vehicle had been purchased with proceeds of bank fraud (Moultrie was subsequently prosecuted in the Eastern District of New York for bank fraud, under 18 U.S.C. § 1344). That same day, Special Agent Mantyla telephoned LSB, advising it that Moultrie had purchased the 1997 Viper with the proceeds of bank fraud and, as a result, the vehicle had been seized by the government.

On July 12, 1998, the Department of Treasury sent LSB official notification of the seizure and administrative forfeiture. That notification provided, among other things, the following:

> You may contest the seizure and forfeiture of the property in U.S. District Court by filing a Claim and Cost Bond and/or you may petition the U.S. Secret Service for return of the property or your interest in the property through the administrative process by filing a Petition for Remission of Mitigation.

Seizure Notification (Exhibit 2 to plaintiff's memorandum). The notification went on to inform LSB:

> If you disagree with the Secret Service's claim that the property is subject to forfeiture and want the case tried in U.S. District Court, you must file a Claim of Ownership and a bond of five thousand dollars ($5,000.00) or ten percent (10%) of the value of the claimed property, whichever is lower, but not less than two hundred fifty dollars ($250.00), with the U.S. Secret Service by 08/01/98.
>
> * * *
>
> If you agree with the Secret Service's claim that the property is subject to forfeiture but wish to have the U.S. Secret Service, through the administrative process, decide to remit (return the property or value thereof) or mitigate (return the property or value thereof upon imposition of a penalty), you must submit a Petition for Remission or Mitigation of the forfeiture to the Deputy Assistant Director at the address indicated. This petition must include proof of your ownership interest in the property . . ... The petition must also include the facts and circumstances that you believe justify the return of the property or the return of your interest in the property.

7

<u>Id.</u>  The notification also informed LSB that to prevail as to a petition for remission or mitigation, it must establish five elements, the last of which required LSB to demonstrate that it had taken "all reasonable steps . . . to prevent the fraud or to prevent the illegal use of the seized property."  <u>Id.</u>

On July 24, 1998, LSB submitted a petition for remission, addressing each of the five elements identified in the notification.  In addition, LSB claimed that its interest in the Viper was exempt from forfeiture under the provisions of 18 U.S.C. § 981(a)(2), insofar as it claimed to be an "innocent owner" of a security interest and unaware that the vehicle had been obtained through fraud.[1]

---

[1]    The so-called "innocent owner" exception provides that: "No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder."  18 U.S.C. § 981(a)(2).

On September 11, 1998, having received no claims challenging the forfeiture of the 1997 Viper (LSB did not contest the forfeiture; it merely sought remission), the government issued a Declaration of Administrative Forfeiture pursuant to 18 U.S.C. § 981. Then, on November 3, 1998, the Financial Fraud Branch of the Secret Service issued an internal report recommending that LSB's petition for remission be denied. The report concluded that although LSB met four of the five criteria, it failed to demonstrate that it satisfied the final factor: that reasonable steps had been taken to prevent the fraud. That recommendation was then submitted for approval at several levels within the Treasury Department.

In the interim, having received no response to its petition for remission, on March 2, 1999, LSB wrote to the Secret Service seeking information as to the status of its petition. On August 31, 1999, the Secret Service issued a formal denial of LSB's petition for remission. See Exhibit 6 to plaintiff's memorandum. In support of that denial, the Secret Service noted:

9

> Based upon a thorough review of the facts and circumstances surrounding the seizure of the requested property, . . . it appears that Laconia Savings Bank did not take all reasonable steps to prevent the fraud.
>
> Laconia Savings Bank approved an incomplete loan application and provided no supporting documentation showing that it verified the information provided by Moultrie prior to approving the loan. The loan application contained no credit references or banking information, and Secret Service investigation revealed that the telephone number listed on the application for Moultrie's employer was a pager number. Therefore, it appears that reasonable steps were not taken to prevent the fraud in this case and this petition is denied.

Exhibit 6 to plaintiff's memorandum.

Approximately 10 days later, LSB submitted a request for reconsideration. In support of that request, LSB submitted the affidavit of Thomas Drouin, Vice President of Laconia Savings Bank. Mr. Drouin stated that he was directly involved in the approval of the consumer purchase money loan to Moultrie. He also said the loan application completed by Moultrie provided for a $35,000 cash down payment and did not reference the fact that Moultrie had traded in the 1996 Viper. Accordingly, Drouin said

10

he was unaware or the existence of a prior, secured loan on the 1996 Viper. With regard to LSB's due diligence in connection with its extension of credit to Moultrie, Drouin said:

> It is commonplace for a loan application to be incomplete. The primary information to be derived from the loan application is to allow the bank to obtain a credit report. It is rare that a bank will check employment or check phone numbers.
>
> In this case, the debt to income ratio was very low suggesting the loan should be approved; however, we did obtain Mr. Moultrie's credit report which demonstrated a limited credit history. Therefore, we sought and obtained further information in the form of first pages of his state and federal income tax returns and correspondence concerning a past due loan with Mercedes-Benz appearing on Mr. Moultrie's credit report.
>
> The primary consideration in the approval of the Moultrie loan was that $35,000 in cash was being placed down on the 1997 Dodge Viper thereby resulting in substantial equity in the bank's security and a substantial investment having been made by the obligor on the note.

Affidavit of Thomas Drouin, Exhibit 7 to plaintiff's memorandum.

On November 8, 1999, the Secret Service denied LSB's request for reconsideration, concluding that LSB was negligent in

11

processing Moultrie's application for credit.  Among other things, the Secret Service emphasized the fact that LSB did not verify Moultrie's employment and disregarded (or failed to notice) significant negative information on his credit report, "which indicated that the social security number used by Moultrie had been used seventeen times in the last sixty days on different inquiries and the social security number was associated with additional subjects."  See Exhibit 8 to plaintiff's memorandum.[2] This proceeding ensued.

_____

[2]     The documentation attached to Drouin's affidavit included a copy of the application for credit Moultrie submitted to LSB as well as a Trans Union Credit Report based on the Social Security number that Moultrie provided.  On the application for credit, Moultrie left blank the entire section in which he was to have provided his credit history, including the name and address of his bank(s), credit card(s), and credit references.  The credit report contains several "red flags," including: (1) a notation indicating that there had been 16 inquiries into Moultrie's credit history in the past 60 days; (2) a "Hawk alert" noting that the Social Security number Moultrie provided had been used 17 times in the last 60 days on different credit inquiries; and (3) a notation indicating that "input SSN associated with additional subject(s) not displayed/returned."  Under the caption "Model Profile," the report stated: "Insufficient length of credit history; too many recent credit checks or recent applications; frequent delinquency."  See Exhibit 7 to plaintiff's memorandum.

12

**Discussion**

The government moves for summary judgment as to the constitutional adequacy of the notice of forfeiture provided to LSB. With regard to all of LSB's remaining claims, the government moves to dismiss, asserting that the court lacks subject matter jurisdiction.

I.   Administrative Forfeiture Generally.

Section 981(a)(1)(c) of Title 18 provides that any property "which constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. § 1344]" is subject to forfeiture to the United States. Section 981(d) of that statute goes on to adopt the seizure and forfeiture provisions of the customs laws, which are set forth in 19 U.S.C. § 1602, et seq.

The customs laws provide that "property worth $500,000 or less is subject to administrative forfeiture without judicial involvement." United States v. Giraldo, 45 F.3d 509, 510 (1st Cir. 1995)(citing 19 U.S.C. § 1607). An aggrieved person is,

13

however, afforded a narrow window of time in which to seek judicial relief by filing a claim with the agency (here, the Secret Service) and a cost bond or, in lieu of a cost bond, a declaration of indigence. See 19 U.S.C. § 1608. "The filing of the claim and the bond stops the administrative process and requires the seizing agency to hand the matter over to the United States Attorney for the commencement of a judicial forfeiture proceeding." Giraldo, at 510-511 (citing 19 U.S.C. § 1608). In a judicial proceeding, the agency is required to go forward and show probable cause for the forfeiture. If successful in that effort, the burden of proof then shifts to the claimant to show that the seized property belongs to him or her and is not the product of unlawful conduct. See Boero v. Drug Enforcement Admin., 111 F.3d 301, 304 (2d Cir. 1997).

If, as here, a claimant fails or chooses not to follow the procedure that would entitle him or her to judicial review, the seizing agency "shall declare the [property] forfeited." 19 U.S.C. § 1609(a). That declaration has the same force and effect

14

as a final decree of forfeiture in a judicial proceeding in a federal district court, and title to the seized property is then deemed vested in the United States, free of any liens or encumbrances (except in circumstances not present here).  19 U.S.C. § 1609(b).  Here, the property (a 1997 Dodge Viper) was declared forfeited on September 11, 1998.

A claimant may administratively oppose the forfeiture, however, by filing a petition for remission or mitigation, also known as a petition for "pardon" or "grace," with the seizing agency.  Under that procedure, a valid forfeiture is presumed. See United States v. Morgan, 84 F.3d 765, 767 n.3 (5th Cir. 1996); 28 C.F.R. § 9.5.  That is to say, "[u]nlike the claimant who files a claim [seeking judicial relief] and posts a cost bond, a petitioner seeking remission or mitigation of a forfeiture does not contest the legitimacy of the forfeiture." Id. (emphasis supplied).  Moreover, as the Court of Appeals for the Eleventh Circuit has observed, "[t]he remission of a forfeiture is neither a right nor a privilege, but an act of

15

grace.  The purpose of the remission statutes is to grant the executive the power to ameliorate the potential harshness of forfeitures."  Averhart v. United States, 901 F.2d 1540, 1543 (11th Cir. 1990).  On July 24, 1998, LSB submitted a petition for remission, which was denied initially and on reconsideration.  See Exhibits 6 and 8 to plaintiff's memorandum.

II.  LSB's Constitutional Challenge.

LSB acknowledges that "[t]he general rule is that federal courts lack jurisdiction to review the merits of an administrative forfeiture decision."  Plaintiff's memorandum at 5.  Nevertheless, it asserts that 28 U.S.C. § 1331 and the Administrative Procedure Act confer jurisdiction on the court to resolve its claim that the notice it received of the government's intention to forfeit the 1997 Viper, as well as the procedures followed by the government in forfeiting that vehicle, violated several of LSB's constitutionally protected rights.  Id.  As this court has previously recognized, the scope of its review of an agency's conduct under these circumstances is limited.

16

[R]emission of forfeiture is a matter committed to the sound discretion of the seizing agency. See <u>Averhart v. United States</u>, 901 F.2d 1540, 1543 (11th Cir. 1990). Accordingly, except under carefully defined and very narrow circumstances, federal courts lack jurisdiction to review the merits of an administrative forfeiture decision, even one that constitutes an abuse of discretion. See <u>Averhart</u>, 901 F.2d at 1543-44.

A federal court might exercise preliminary jurisdiction to review the <u>procedural</u> aspects of a denial of a petition for remission. For example, other circuits have determined that a federal court may exercise jurisdiction to review the procedural safeguards afforded by a seizing agency, particularly when the agency "does not even consider a request that it exercise its discretion." <u>Averhart v. United States</u>, 901 F.2d 1540, 1544 (11th Cir. 1990); <u>cf.</u> <u>Scarabin v. Drug Enforcement Administration</u>, 919 F.2d 337, 338 (5th Cir. 1990) (federal court may review agency's refusal to exercise jurisdiction over a claim as well as the nature of any procedural safeguards, but is precluded from reviewing the merits).

<u>Arabaxhi v. Constantine</u>, No. 97-322-M (D.N.H. Sept. 16, 1998), <u>aff'd</u>, 201 F.3d 426 (1st Cir. 1999) (per curiam), <u>cert.</u> <u>denied</u>, __ U.S. __, 2000 WL 559003 (June 12, 2000).

1.    <u>Sufficiency of the Notice of Seizure.</u>

17

With regard to the notice of seizure provided by the Secret

Service, LSB claims that it failed to:

> provide any information as to any of the other
> procedures of the administrative process; did not
> inform the recipient that the administrative process
> would not be subject to judicial review; did not advise
> the recipient that the granting of an administrative
> Petition was a matter of grace within the sole
> discretion of the Department which could decide to
> retain the vehicle for itself; did not notify the
> recipient property owner that there would not be any
> procedural due process safeguards in the administrative
> process; nor did it warn the property owner that the
> "innocent owner" statutory exemption from forfeiture as
> provided by 18 U.S.C. § 981(a)(2) would not apply or be
> considered in the administrative process.

Plaintiff's memorandum at 4.

The Supreme Court has held that, "[a]n elementary and

fundamental requirement of due process in any proceeding which is

to be accorded finality is notice reasonably calculated, under

all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present

their objections." Mulane v. Central Hanover Bank & Trust Co.,

339 U.S. 306, 314 (1950). Such notice must reasonably convey the

18

required information and must afford interested parties a reasonable time to make their appearance. Id. Accordingly, the statute governing the government's seizure of the Viper provides that the government shall publish a notice of its seizure and intent to forfeit the subject property for at least three successive weeks and provide written notice of the seizure, together with information on the applicable procedures, to each party who appears to have an interest in the seized property. 19 U.S.C. § 1607(a).

Here, there can be little doubt that the notice provided to LSB complied with the requirements of due process and section 1607(2). LSB does not contest the government's representation that notice of the seizure and planned forfeiture was published, for three consecutive weeks, in The New York Times. See Exhibit C to the government's memorandum. And, among other things, the notice provided to LSB: (1) identified the make, model, year, and vehicle ID number of the seized car; (2) its appraised value; (3) the statutory basis for the vehicle's seizure; and (4) detailed

19

instructions concerning the procedures by which LSB could either contest the forfeiture in a judicial proceeding or request an administrative remission or mitigation of the forfeiture. <u>See</u> Notice of Seizure of Property dated July 12, 1998, Exhibit 2 to plaintiff's memorandum. "Based on the clarity of this notice, . . . it satisfies Constitutional due process requirements." <u>Litzenberger v. United States</u>, 89 F.3d 818, 822 (Fed. Cir. 1996).[3]

---

[3] Parenthetically, the court notes that LSB asserts, without citation to any authority, that the government should not have forfeited the vehicle after LSB raised, in its petition for remission, the "innocent owner" defense. To be sure, section 981(a)(2) makes clear that the "innocent owner" defense, if applicable, prevents forfeiture of the subject property. However, LSB did not challenge the forfeiture. Instead, it sought only the benefit of the administrative remission or mitigation procedures. Moreover, in rejecting LSB's petition for remission, the Secret Service specifically concluded that LSB was negligent in extending credit to Moultrie in that it could and should have taken reasonable steps to prevent the fraud. <u>See</u> Exhibits 6 and 8 to plaintiff's memorandum. At a minimum, therefore, the government implicitly concluded that LSB was not an "innocent owner."

20

2.    <u>Sufficiency of the Forfeiture Procedures</u>.

As to the alleged deficiencies in the forfeiture proceedings themselves, LSB says:

> it is clear that there are substantial due process issues concerning the sufficiency of the Department's proceedings and the adequacy of its notice.  With respect to the sufficiency of the proceedings, the Plaintiff contests the timing of the Department's notice, the lack of any hearing, the lack of an open process and opportunity to examine the Department's investigation, the time period taken to reach a decision, and the fact that the ruling upon request for reconsideration was made by the same person making the initial decision.

Plaintiff's memorandum at 11.  However, LSB provides no legal support for any of those claims.  Instead, it merely states that, "[a] detailed analysis of each of these issues is not possible at this time and will be the subject of future memoranda."  <u>Id.</u>

Even assuming, notwithstanding its failure to develop those arguments or provide any supporting legal authority, LSB has properly put them in play, and further assuming that the court actually has jurisdiction to address those claims, <u>but see</u> <u>Sarit</u>

v. U.S. Drug Enforcement Admin., 987 F.2d 10 (1st Cir. 1993), they are without merit.  See, e.g., United States v. Von Neumann, 474 U.S. 242, 250 (1986) ("[R]emission proceedings are not necessary to a forfeiture determination, and therefore are not constitutionally required.  Thus there is no constitutional basis for a claim that respondent's interest in the car, or in the money put up to secure the bond, entitles him to a speedy answer to his remission petition."); Willis v. United States, 787 F.2d 1089, 1094 (7th Cir. 1986) (holding that pre-seizure hearings are not constitutionally required and concluding that the delay between the plaintiff's filing of a petition for remission and the government's response did not violate due process); Cecconi v. U.S. Department of Treasury, 1994 WL 471233 at 5 (N.D. Ill. August 29, 1994) (when "notice . . . [is] sufficiently clear to place plaintiff and his attorney on notice of the applicable procedures and time limitations for obtaining a hearing[,] [p]laintiff has no constitutional right to any additional process. . . . Accordingly, plaintiff was not entitled to a hearing on his petition for remission.").

22

3. <u>LSB's Remaining Constitutional Claims</u>.

As to LSB's remaining (and largely undeveloped) claims that the government's forfeiture of the 1997 Dodge Viper violated its rights under the Just Compensation Clause, as well as the Fourth, Eighth, and Fourteenth Amendments, the court lacks subject matter jurisdiction under the APA and § 1331 to address those claims. <u>See</u> <u>Sarit</u>, 987 F.2d at 17. <u>See also</u> <u>Linarez v. United States Department of Justice</u>, 2 F.3d 208, 212 (7th Cir. 1993) (district court lacked jurisdiction to consider plaintiff's constitutional challenges to forfeiture once plaintiff elected not to post the required bond and contest the forfeiture); <u>Willis v. United States</u>, 787 F.2d at 1093 (same with regard to Fourth Amendment challenge to forfeiture); <u>Cecconi</u>, 1994 WL 471233 (N.D. Ill. August 24, 1994) (same). And, even if the court had jurisdiction to consider those claims (that is, if they could reasonably be construed as challenging the <u>procedure</u> employed, rather than the merits of the forfeiture itself), it would find them to be without merit. <u>See, e.g.</u>, <u>Litzenberger v. United States</u>, 89 F.3d at 821 (failure to pursue judicial challenge to

23

forfeiture constitutes waiver of Eighth Amendment excessive fine claim under the Little Tucker Act).

## Conclusion

LSB acknowledges that it received notice of the Secret Service's seizure of the 1997 Dodge Viper and of its intent to forfeit that vehicle.  That notice provided LSB with detailed information concerning its right to either contest the forfeiture in a judicial forum, or seek administrative relief in the form of a petition for remission or mitigation.  That notice was constitutionally sufficient.

Upon receipt of the notice, LSB elected to pursue administrative relief.  In response to LSB's petition for remission, the government provided a detailed explanation for its conclusion that LSB had failed to take reasonable steps to prevent Moultrie's fraud.  <u>See</u> Exhibits 6 and 8 to plaintiff's memorandum.  <u>See also</u> Application for Credit submitted by Moultrie and Trans Union Credit Report, attached to Exhibit 7 to

24

plaintiff's memorandum.  This court plainly lacks subject matter jurisdiction to consider the merits of that decision, even if it was the product of an abuse of discretion - which it may well have been.

To the extent that the court has preliminary jurisdiction to address LSB's procedural challenges to the forfeiture proceedings, it concludes that those proceedings were conducted in a manner that was consistent with both statutory and constitutional requirements.  With regard to LSB's remaining constitutional challenges to the forfeiture of the vehicle (e.g., Fourth, Fifth, and Eighth Amendment), the court lacks subject matter jurisdiction.  To the extent the court does have subject matter jurisdiction over them, it concludes that they are without merit.

LSB has some right to feel ill-used by the government because, although it might be charged with knowledge that Moultrie posed a poor credit risk, there is no evidence that it

25

had any information suggesting that Moultrie had fraudulently obtained unencumbered title to the 1996 Viper.  Making a perhaps risky but well secured car loan probably should not serve as a basis for charging LSB with failing to take reasonable steps to prevent Moultrie's fraud.  After all, the apparent fraud occurred in New York and then Virginia, and the record does not suggest that LSB knew of it, or that any indicia or "badges" of fraud attended its loan to Moultrie.

Although administrative remission is probably a remedy that offers more promise than product, that is the option LSB elected, and this court is powerless to review the Secret Service's decision on the merits.  Defendant's motion for summary judgment and for dismissal for lack of subject matter jurisdiction (document no. 5) is, therefore, granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

　　　　**SO ORDERED.**

_____

                              Steven J. McAuliffe
                              United States District Judge

June 16, 2000

cc:  James f. Lafrance, Esq.
     Jean B. Weld, Esq.