**Kevin L. UPSHAW, Plaintiff,**

**v.**

**UNITED STATES CUSTOMS SERVICE, et al., Defendants.[1]**

**No. 01–10040–PBS.**

United States District Court, D. Massachusetts.

July 18, 2001.

---

**1.** Other defendants are the United Parcel Service and the Brockton Police Department.

Kevin Upshaw, Roxbury, MA, plaintiff pro se.

Anita Johnson, United States Attorney's Office, Boston, MA, Dena T. Sacco, U.S. Attorneys Office, Boston, MA, for United States Department of Treasury, defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

*Pro se* Plaintiff Kevin L. Upshaw filed this verified complaint seeking judicial review of administrative forfeiture proceedings pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, and the Fourth, Fifth, and Fourteenth Amendments. He claims that the seizure of $50,000.00 by Defendant United States Customs Service was unconstitutional, because he is an interested party who received inadequate notice under the Due Process Clause of the Constitution. The Customs Service moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the grounds that the Court lacks subject matter jurisdiction because the final forfeiture order has not yet been issued; Plaintiff lacks standing to bring a due process claim; and notice was adequate to withstand a due process challenge. Plaintiff has also filed a motion for summary judgment, which the Court *DENIES.* The Court *ALLOWS* Defendant's motion to dismiss.

### II. BACKGROUND

The record contains the following facts based on the verified complaint and affidavits, which are undisputed unless otherwise stated. On June 14, 2000, the United Parcel Service ("UPS") found $50,000 in currency during a routine inspection of a package sent by "J. Bartsch, 6 West Patterson Avenue, Randolph, MA" from the UPS facility in Brockton, Massachusetts. UPS contacted the Brockton Police, who turned the money over to the Customs Service on July 6, 2000 for seizure and forfeiture proceedings pursuant to 18 U.S.C. § 981(a)(1)(C) and/or 21 U.S.C. § 881(a)(6). Both the Brockton Police and Customs Service identified the sender as James Bartsch, whose mother lives at 6 West Patterson Avenue. During interviews with both the Police and Customs, James Bartsch disclaimed any knowledge of the package or its contents.

On September 7, 2000, Customs sent notices of intent to forfeit the currency to James Bartsch and the designated recipient of the package, M. Magaretich, 31447

East Ninth Drive, Laguna Niguel, California. Neither responded. The Customs Service also published a notice in the *Boston Herald* for three consecutive weeks, on October 9, 16, and 23, 2000. The published notice advised that any claim would have to be filed within 30 days of the date of final publication, or by November 22, 2000.

On November 1, 2000, Upshaw wrote a letter to the Customs Service requesting information about the forfeiture. During an interview, Upshaw identified Adam White, an individual with whom he had served time in prison, as the person who requested that he file a claim for the currency. At the end of the interview, Upshaw admitted that he had no basis to pursue the claim. On November 14, 2000, the Customs Service received a second letter requesting a notice about the seizure under the Freedom of Information and Privacy Acts. The office responded on November 29, 2000 by requesting that Upshaw submit written authorization from the individuals to whom the records related.

Upshaw never filed a claim and communicated no further with the United States Customs Service. Instead, on January 16, 2001, he served a summons and verified complaint alleging that he was acting on behalf of the plaintiff-owner "Joe Bartsch," a homeless person who has a last known address of 6 West Patterson Avenue, Randolph, Massachusetts. Attached to the complaint is a notarized power of attorney from Lancelet Blair and Joe Bartsch dated August 10, 1994. According to the complaint, the plaintiff-owner was informed on June 25, 2000 by UPS that the Brockton Police had seized the package; on July 15, 2000 by the Brockton Police that Customs had seized the package; and on October 13, 2000 that the money was going to be forfeited by the Customs Service. (¶¶ 2–4.)

The notice from the *Boston Herald* was also attached to the complaint.

In opposition to the government's motion, Plaintiff also submitted an affidavit stating that he was the agent bailee of Joe Bartsch, who "is the true owner of the currency seized by the defendants;" that Bartsch earned the money "throughout his years of working odd jobs, receiving charity, and recycling all kinds of metal, bottles and cans;" that Bartsch sent the money to a friend in California to secure a place to live but the friend had moved; and that Bartsch falsely used the Randolph address because the UPS required him to have a return address despite his homelessness. Although the power of attorney is dated 1994, Plaintiff claims he was appointed "bailee" on October 28, 2000 after the notice was published in the *Boston Herald.*

The Customs Service has introduced troubling evidence regarding Plaintiff's claims. First, the notarized document appeared to involve fraudulent fabrication, as the notary informed the Customs Service that his log indicated he did not notarize a power of attorney from Bartsch to Upshaw on the date specified. In addition, in a forfeiture proceeding in 1995, Upshaw had submitted a claim which the Customs Service believed was fraudulent. Finally, there was no evidence that anyone named Joe Bartsch ever lived in the West Patterson Avenue location. Customs states that it therefore declined to send Upshaw a notice without further proof of his status as an interested party.

As of March 23, 2001, the administrative forfeiture proceedings were not yet complete, and there had been no declaration of forfeiture.

## III. DISCUSSION

### A. Motion to Dismiss

The threshold question is whether this Court has subject matter jurisdic-

tion over this dispute. The Customs Service moves to dismiss pursuant to Fed. R.Civ.P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Plaintiff does not have a cause of action under the newly enacted Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). The question of subject matter jurisdiction is a complicated one. The United States Supreme Court has often said that a colorable claim of a federal cause of action will confer subject matter jurisdiction even though the claim itself may fail as a matter of law on further examination. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding "that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case" (emphasis in original)). Generally, the district court has jurisdiction unless the claim is "immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (citing *Bell v. Hood,* 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). In determining subject matter jurisdiction, the Court may consider affidavits. *See Laconia Sav. Bank v. United States,* 116 F.Supp.2d 248, 249 (D.N.H.2000).

When the complaint is construed generously in favor of the *pro se* plaintiff, as the law requires, he appears to contend that CAFRA does not provide the exclusive remedy for his claim of a due process violation because he received inadequate notice. As will be seen, the determination as to whether the dispute is better resolved under Fed.R.Civ.P. 12(b)(1), Fed. R.Civ.P. 12(b)(6), or Fed.R.Civ.P. 56 turns out to be largely academic.

Since affidavits submitted by both parties are included in the record, the government's 12(b)(6) motion to dismiss "shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b). The plaintiff submitted a motion for summary judgment as well. Summary judgment is appropriate when the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail on summary judgment, the moving party must show that there is an absence of evidence to support the non-moving party's position. *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995). I turn now to the new Civil Asset Forfeiture Reform Act of 2000, Pub,. L. No. 106–185, 114 Stat. 202.

**B. Civil Asset Forfeiture Reform Act of 2000**

On April 25, 2000, Congress enacted CAFRA, codified in part at 18 U.S.C. § 983, which sets forth "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Id.* § 983(e)(5). Section 983 applies to any forfeiture proceeding commenced on or after the date that is 120 days after April 25, 2000, which was August 23, 2000. 114 Stat. at 225. *See also* 8 U.S.C. § 1324, Historical and Statutory Notes.

No definition is given of what it means for a forfeiture proceeding to be "commenced." In the context of a judicial forfeiture, the First Circuit noted it commenced when the government filed a complaint of forfeiture. *United States v. Real Prop. Located at 221 Dana Ave., Hyde Park, MA* 239 F.3d 78, 82 n. 3 (1st Cir.2001); *cf. United States v. Real*

*Prop. in Section 9, Town 29 North, Range 1 W. Township of Charlton,* 241 F.3d 796, 798 (6th Cir .2001) (applying CAFRA's heightened burden of proof to a pending judicial case). Relying on legislative history, the government contends that this non-judicial forfeiture proceeding commenced on the date the first notice to those identified as having an interest in the currency was sent, which was on or about September 7, 2000. *See* 146 Cong. Rec. H2040, 2051 (daily ed. Apr. 11, 2000) (statement of Rep. Hyde). The Court need not resolve this question because plaintiff does not dispute that CAF-RA applies to this case. Instead he disputes that CAFRA provides an exclusive remedy for a constitutional claim.

Under CAFRA, in certain non-judicial civil forfeiture proceedings (like this one), the federal seizing law enforcement agency is required to send written notice to interested parties within 60 days after the date of seizure. 18 U.S.C. § 983(a)(1)(A)(i). However, if the property is seized by a state or local law enforcement agency and turned over to a federal law enforcement agency for forfeiture, notice must be sent within 90 days after the date of the seizure by the state or local agency. *Id.* § 983(a)(1)(A)(iv). If the government later learns about the "identity or interest" of a party before a declaration of forfeiture, "notice shall be sent to such interested party not later than 60 days after the determination by the Government of the identity of the party or the party's interest." *Id.* § 983(a)(1)(A)(v). Any person claiming property seized in a non-judicial civil forfeiture proceeding who does not receive a personal notice letter may file a claim "not later than 30 days after the date of final publication of notice of seizure." *Id.* § 983(a)(2)(B). The claim must identify the specific property claimed, the claimant's interest in such property, and be made "under oath, subject to penalty of perjury." *Id.* § 983(a)(2)(C)(i)–(iii). Unless a judicial extension is granted, the government must file a complaint for forfeiture under the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property within 90 days after a claim is filed. *Id.* § 983(a)(3)(A).

The CAFRA provision for challenging inadequate notice in administrative forfeiture proceedings states:

(e) Motion to set aside forfeiture.

(1) Any person entitled to written notice in any non-judicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

. . . . .

(3) A motion under paragraph (1) may be filed not later than 5 years after the date of final publication of notice of seizure of the property.

. . . . .

(5) A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.

*Id.* § 983(e)(1).

Plaintiff essentially contends that defendants failed to satisfy the notice require-

ments of 19 U.S.C. § 1607[2] and the implementing regulations,[3] as well as the Due Process Clause of the Fifth Amendment which requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). His argument fails for multiple reasons. Under the circumstances of this case, any argument about the lack of notice is hopeless, because Plaintiff not only learned about the pendency of the administrative forfeiture proceedings, but he communicated in person and by mail with the Customs Service about those proceedings. He was informed in person and by the publication precisely how to file a claim, yet he failed to do so.

■ Plaintiff's beef seems to be that the Customs Service refused to send him a personalized written notice of seizure under 19 U.S.C. § 1607(a). It is unclear what an agency should do when a person states he is an "interested party" but the agency doubts it. According to 19 C.F.R. § 162.31, notice "shall be given to each party that the facts of record indicate has an interest in the claim or seized property." In addition, 19 C.F.R. § 162.94, the implementing regulation for 18 U.S.C. § 983, requires the claimant to submit "customary documentary evidence" of claimant's interest, if it is available. In light of the information and lack of "docu-

mentary evidence" of Upshaw's interest available to the Customs Service in the "facts of record," the Court cannot conclude that there was any bad faith in declining to send a personal notice letter to Upshaw. *See Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16 (1st Cir. 1993). In any event, even if there was a statutory or regulatory violation, this hardly arises to a constitutional dimension because Plaintiff had actual notice. Nonetheless, Plaintiff insists he was prejudiced, because the published notice did not explain the procedures and remedies for challenging it. This is an uphill assertion as both the Customs Service and the published notice explained how to make a claim.

■ This brings us back to the issue of whether this Court has subject matter jurisdiction. In the past courts have entertained collateral challenges to the adequacy of notice, "reasoning that the mechanism is not available to a plaintiff who is not properly notified of the pending forfeiture." *Id.* at 17; *United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995). Under CAFRA, the statutory procedure for challenging inadequacy of notice in a judicial hearing after the declaration of forfeiture seems to meet the minimal due process requirements of *Mullane*. Since there is a facially adequate mechanism for challenging the notice pursuant to § 983(e) of CAFRA, any facial constitutional challenge to CAFRA must be dismissed on the merits, at least based on this *pro se* briefing.

---

**2.** For seizures valued under $500,000, 19 U.S.C. § 1607(a) provides:
... the appropriate customs officer shall cause a notice ... to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who ap-

pears to have an interest in the seized article.

**3.** 19 C.F.R. §§ 162.31 (Notice of fine, penalty, or forfeiture incurred) and 162.45(a) (Summary forfeiture: Property other than Schedule I and Schedule II controlled substances. Notice of seizure and sale).

Moreover, Plaintiff's non-constitutional claim of lack of adequate notice under the statutes and regulations is premature, because there has been no "declaration of forfeiture." There is no statutory mechanism for judicial review of statutory or regulatory glitches in the notice at this early point in the proceedings. *Sarit*, 987 F.2d at 16–17 (after finding notice was constitutionally sufficient, holding that the court did not have jurisdiction over the remainder of the case because of the Administrative Procedures Act, 5 U.S.C. § 701(a)(1), which limits waiver of sovereign immunity where "statutes preclude judicial review"). Hence, I conclude that I do have subject matter jurisdiction over the constitutional challenge—and reject it—but lack subject matter jurisdiction over any non-constitutional challenge to the notice under the statute and regulations.

## IV. ORDER

Accordingly, Plaintiff's motion for summary judgment (Dockets # 6 & # 16) is **DENIED,** and Defendant's motion to dismiss (Docket # 11) is **ALLOWED** without prejudice.[4]

---

4. The Court also rejects Plaintiff's Fourth Amendment claims against the United Parcel Service and the Brockton Police Department. Since the Fourth Amendment protects only against governmental action, common carriers and other private parties do not violate the amendment if they search the packages of others. *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir.1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113–114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); *see also United States v. David*, 943 F.Supp. 1403, 1411 (E.D.Va.1996) (United Parcel Service entitled to inspect packages pursuant to its tariff and under common law). "In such cases, '[t]he arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search into a government search subject to the Fourth Amendment.'" *Villarreal*, 963 F.2d at 774 (quoting *Illinois v. Andreas*, 463 U.S. 765, 769 n. 2, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)); *see also United States v. Mendez-de Jesus*, 85 F.3d 1, 2–3 (1st Cir.1996) (no governmental action, thus no violation of the Fourth Amendment, when two private citizens turned defendant over to police). Here, a United Parcel Service employee conducted the search and seizure, and then handed the currency over to the Brockton police.