**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVE BENTLEY, a single man and THOMAS RAY BENTLEY, a married man, | No. 09-16111 |
| | D.C. No. 2:08-cv-01796-ECV |
| Plaintiffs - Appellants, | |
| v. | MEMORANDUM[*] |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, a principal law enforcement agency within the United States Department of Justice; et al., | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Edward C. Voss, Magistrate Judge, Presiding

Argued and Submitted April 14, 2010
San Francisco, California

Before: KLEINFELD and THOMAS, Circuit Judges, and STAFFORD,[**] Senior District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable William H. Stafford Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

The district court did not abuse its discretion in taking judicial notice of the state court judgment. Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Similarly, we now take judicial notice of the Arizona Court of Appeals' decision affirming Steve Bentley's criminal conviction for possession of the weapons. "We may take judicial notice of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). The facts as stated therein are dispositive.

The Arizona Court of Appeals' opinion confirms that Steve Bentley "admitted having a key to the storage locker on his key ring" and that "the access code to the storage facility . . . [was] in his wallet." State v. Bentley, No. 1 CA-CR 09-0260, 2010 WL 2638504, at *1 (Ariz. Ct. App. July 1, 2010). Likewise, although the initial storage-locker agreement was signed solely by his father, Thomas Bentley, there was paperwork in Steve Bentley's automobile "evidencing that Bentley was vacating [this initial] Unit . . . and transferring the account to Unit 2160. The paperwork identified [Steve] Bentley and his father as [its] authorized users." Id. at *2. The key, access code, and paperwork establish that Steve

2

Bentley had access to and constructive possession of the weapons.  United States v. Cousins, 427 F.2d 382, 384 (9th Cir. 1970).

Ordinarily, we must accept a complaint's factual allegations as true and construe them in the light most favorable to the plaintiffs for the purposes of deciding a motion to dismiss.  Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002).  "However, we need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  The doctrine of collateral estoppel bars us from re-litigating the factual dispute of whether Steve Bentley possessed the weapons.  See Reyn's Pasta Bella, 442 F.3d at 746 (quoting Kourtis v. Cameron, 419 F.3d 989, 994 (9th Cir. 2005)).  The jury  found beyond a reasonable doubt that Steve Bentley, not Thomas Bentley, was in possession of the forfeited weapons.  State v. Bentley, No. 1 CA-CR 09-0260, 2010 WL 2638504, at *2  (Ariz. Ct. App. July 1, 2010).

Had the weapons been pledged as collateral to secure Thomas Bentley's loan to his son, then a possessory lien might compel a different result.  See United States v. Casterline, 103 F.3d 76, 79 (9th Cir. 1996) ("Ownership without physical

3

access to, or dominion and control over, the firearm does not constitute possession. If the felon owns a firearm, but does not actually possess or have dominion and control over it, then he does not possess the firearm for purposes of 18 U.S.C. § 922(g)."). The pledgor does not possess the property he pawned, unless and until the pawnshop releases it. But Steve Bentley retained actual or constructive possession of the guns.

In light of Steve Bentley's previous convictions and admissions, he has no legal right to possess these weapons and they are therefore contraband. 18 U.S.C. § 922(g). We decline to accept the Bentleys' suggestion that the district court must allow them to amend, because no amendment could save their claim. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998).

We also assume, without deciding, that the ATF's notice to the father, Thomas Bentley, was constitutionally inadequate. Taylor v. Westly, 488 F.3d 1197, 1201 (9th Cir. 2007). But even if we treated the father as having made a timely claim against the ATF for the seized weapons, his claim would still fail because his alleged security interest, perfected neither by recording nor by possession, would be subordinate to the government's claim. A.R.S. § 47-9313.

4

Nor can Thomas Bentley fit within 18 U.S.C. § 983(d)'s "innocent owner" exception, because he had knowledge "of the conduct giving rise to forfeiture" when he allowed his son to possess or constructively possess the guns.  18 U.S.C. § 983(d)(2)(A)(i).

AFFIRMED.

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM STAFFORD, District Judge, concurring.

While I concur in the result reached by the majority, I write separately to explain why I think the district court should be affirmed.

On December 29, 2007, the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "Bureau") seized 79 firearms from a storage room in Gilbert, Arizona. After receiving notice of administrative forfeiture proceedings against the seized property, Steve and Thomas Bentley, using the same law firm, filed separate claims with the Bureau, challenging the forfeiture and seeking return of the firearms. The Bentleys' claims were denied by the Bureau on the basis that the claims were not received before the statutory claim period expired. The Bentleys thereafter filed a complaint in federal district court, alleging that the Bureau failed to give them proper notice of seizure in violation of their due process rights. The district court dismissed the action without elaboration. Because our review is *de novo*, we can affirm the district court's dismissal on any ground supported by the record.

The Capital Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, sets forth "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute. *Id.* at § 983(e)(5). That remedy is limited as follows:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if-

> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; *and*

> (B) *the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.*

18 U.S.C. § 983(e)(1)(A) (emphasis added).

By the statute's terms, relief is available only in instances where the injured party did not receive adequate notice to challenge the proceeding. It follows that the court's review is limited to determining whether the government followed proper procedural safeguards. Consideration of the merits of a non-judicial forfeiture is beyond the purview of the court's review. *See e.g.*, *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (explaining that, under § 983(e), the court has jurisdiction to review the procedures but not the merits of a non-judicial forfeiture); *United States v. Steven*, No. CR 04-00289 WBS, 2009 WL 55919, at 1 (E.D. Cal. Jan. 07, 2009) (same).

The Bentleys maintain that the Bureau failed to provide them with proper notice of the forfeiture proceeding. To succeed with their claim, they must show

not

only that the Bureau failed to take reasonable steps to notify them but also that they did not know or have reason to know of the seizure within sufficient time to file a timely claim. *United States v. McClendon*, 10 Fed. Appx. 341, 344 (7th Cir. 2001) (unpublished); *see also Upshaw v. United States Customs Serv.*, 153 F. Supp. 2d 46, 51 (D. Mass. 2001) (rejecting argument based on lack of written notice because the claimant had actual notice of the non-judicial forfeiture proceedings within sufficient time to submit a timely claim); *United States v. $10,000.00 in United States Currency*, No. 06cv2439-L(AJB), 2007 WL 2330318, at *4 (S. D. Cal. Aug. 13, 2007) (noting that a person with actual notice of the seizure who did not receive a written notice and did not timely file a claim loses his or her right to set aside a forfeiture).

18 U.S.C. § 983(a)(2)(B) provides that a person seeking the return of forfeited property may file a claim "not later than the deadline set forth in a personal notice letter . . . , except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure." A claim is "filed" when it is received by the seizing agency, not when it is mailed. *United States v. $65,930.00 in U.S. Currency*, No. 3:03CV01625 (RNC), 2006 WL 923704, at *2 (D. Conn. Mar. 28, 2006).

An exhibit to the Bentleys' complaint reveals that the Bureau published notice of the seizure in *The Wall Street Journal*—a newspaper of national circulation—on January 17, 24, and 31, 2008.  Assuming, for the sake of argument, that the Bureau failed to give both Thomas and Steve Bentley proper written notice of the forfeiture, the time for filing a claim lapsed on March 1, 2008, thirty days after final publication in *The Wall Street Journal*.[1]  Attachments to their complaint affirmatively establish that both Bentleys had to have had actual notice of the seizure *no later* than Tuesday, February 26, 2008, the day their law firm first wrote a letter to the Bureau asserting a claim to the seized weapons.  Thomas's and Steve's claims were received by the Bureau on March 4 and 6, 2008, respectively.  Because it is receipt by the Bureau and not posting by the claimants that determines "filing," the Bentleys' claims were clearly late, even if we assume that they were entitled to rely on the time-filing period triggered by notice in *The Wall Street Journal*.

In sum, I would affirm because the Bureau properly denied the Bentleys' claims as being untimely filed, and the district court correctly dismissed the Bentleys' complaint for failure to state a due process claim.  *See*, *e.g.*, *Nunley v. Dep't of Justice*, 425 F.3d 1132, 1139 (8th Cir. 2005) (explaining that "a person

---

[1]  Because there were 29 days in February in 2008, the thirty-day period following January 31, 2008, ended on March 1, 2008.

cannot complain about the constitutionality of the methods used to provide notice [of forfeiture] when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm").